■ HATTIE WILSON, as Executrix of JAMES WILSON, Deceased, Appellant, v CITY OF NEW YORK et al., Defendants, and METROPOLITAN TRANSPORTATION AUTHORITY et al., Respondents. KRZYSZTOF BELZEK, Appellant, v LEHRER, McGOVERN, BOVIS, INC., Respondent, et al., Defendant. RYSZARD KRUZYNSKI, Appellant, v LEHRER, McGOVERN, BOVIS, INC., Respondent, et al., Defendant. (And Other Actions.) [885 NYS2d 279]—

Order, Supreme Court, New York County (Louis B. York, J.), entered February 15, 2008, which granted defendants respondents' motion to set aside the jury verdicts as to each plaintiff on damages and ordered a new trial on that issue, unanimously reversed, on the law and the facts, without costs, the verdicts reinstated, but the awards for past and future pain and suffering, Wilson's and Belzek's awards for past lost earnings and Kruzynski's award for future lost earnings vacated, and each matter individually remanded for a new trial solely as to such damages, unless that corresponding plaintiff, within 30 days of service of a copy of this order, stipulates to reduce the applicable awards as follows, and to the entry of judgment in accordance therewith: plaintiff Wilson's award reduced for her decedent's past pain and suffering from $1.25 million to $900,000, for future pain and suffering from $2.5 million to $135,000, and for past lost earnings from $233,000 to $198,580; plaintiff Belzek's award reduced for past pain and suffering from $1.25 million to $900,000, for future pain and suffering from $4,875,000 to $3,510,000, and for past lost earnings from $332,000 to $330,000; and plaintiff Kruzynski's award reduced for past pain and suffering from $1.25 million to $900,000, for future pain and suffering from $3 million to $2,025,000, and for future lost earnings from $490,000 to $389,184.

Plaintiffs brought this action to recover for injuries they sustained as a result of lead intoxication caused by their inhaling fumes while engaged in demolition work at Grand Central Terminal. The jury found defendants liable and awarded damages for past and future pain and suffering and lost earnings. Defendants moved to vacate the verdict on the grounds that

plaintiffs' summation was prejudicial and that the damages awards were excessive and unsupported by the evidence. The trial court set aside the damages verdict based on prejudicial language in the summation, but never reached the issues raised in the motion concerning damages.

We find that the court erred in setting aside the damages verdicts based on the claimed summation errors. Many of the summation remarks challenged on appeal were not objected to and defense counsel did not ask for any curative instructions or seek a mistrial with regard to them. Thus, defendants failed to properly preserve their objections to these comments (*see Lucian v Schwartz*, 55 AD3d 687, 689 [2008], *lv denied* 12 NY3d 703 [2009]; *Bennett v Wolf*, 40 AD3d 274, 275 [2007], *lv denied* 9 NY3d 818 [2008]). Nor have defendants shown error so fundamental that it caused a gross injustice (*see Duran v Ardee Assoc.*, 290 AD2d 366, 366-367 [2002]).

As to those summation complaints that were preserved, the court sustained several of the objections and on one occasion admonished counsel. Another time the court struck the comment and directed the jury to disregard it. In any event, after a seven-week trial with numerous witnesses and exhibits, thousands of pages of testimony and lengthy closing statements, these remarks were unlikely to have affected the outcome (*see Pareja v City of New York*, 49 AD3d 470 [2008]), especially in light of the strength of plaintiffs' case. All three plaintiffs testified as to the numerous physical and neurological injuries they suffered, and compelling medical evidence was presented linking their symptoms to their exposure to lead at Grand Central Terminal.

Although several of counsel's comments about defendants' expert medical witness, including calling him a "hired gun," were improper and would have been better off left unsaid, they did not "create a climate of hostility that so obscured the issues as to have made the trial unfair" (*Duran v Ardee Assoc.*, 290 AD2d at 367, quoting *Balsz v A & T Bus Co.*, 252 AD2d 458, 459 [1998]; *see also Binder v Miller*, 39 AD3d 387 [2007]). In fact, the jury had ample reason to reject this expert's testimony and accept plaintiffs' claims. Plaintiffs' medical expert concluded that their injuries were caused by lead intoxication at Grand Central Terminal. In contrast, defendants' expert theorized that Wilson, Kruzynski, perhaps Belzek, and a fourth plaintiff who had settled, all coincidentally suffered from Parkinson's disease, a conclusion even the expert himself found "very unusual." Moreover, this witness conceded that he had never treated any adult patients with lead intoxication in his 30 years of practice.

In light of this testimony, which the jury reasonably found implausible, there was no danger that the jury was so influenced by counsel's remarks that they reached a verdict unsupported by the evidence (*see Calzado v New York City Tr. Auth.*, 304 AD2d 385, 385 [2003]).

Likewise, the suggestion by plaintiffs' counsel that the jury put itself in plaintiffs' shoes to determine the appropriate damages, although improper, was not so egregious as to warrant setting aside the verdict (*see Young v Tops Mkts.*, 283 AD2d 923, 924 [2001]). *Liosi v Vaccaro* (35 AD2d 790 [1970]) and *Weintraub v Zabotinsky* (19 AD2d 906 [1963]), relied upon by defendants, do not stand for the proposition that making such a comment during summation automatically warrants setting aside a verdict. In these two cases, it was the court, in its charge, that improperly directed the jury to use this incorrect standard for determining how to compensate the plaintiffs for their injuries. Here, defendants raise no objection to the court's charge. Furthermore, the court instructed the jury that the summation remarks were not evidence and that the jury was bound to accept the law as charged and reach a verdict based on the evidence presented.

Although defendants' complaints about the summation do not warrant vacatur of the jury's damages verdict, we find that the pain and suffering awards and some of the lost earnings awards are excessive because they are not supported by the record and they deviate materially from what would be reasonable compensation (*see* CPLR 5501 [c]).\* Accordingly, we have reduced these lost earnings awards to the highest amount that can be justified by the evidence. We decline to disturb the awards of $1 million to Belzek for future lost earnings and $182,000 to Kruzynski for past lost earnings because these awards are reasonable compensation in light of the W-2s in evidence.

The lost earnings awards must be vacated to the extent indicated. Contrary to defendants' claims, there was no need for plaintiffs to mitigate damages because the testimony of medical and vocational witnesses demonstrated that plaintiffs' injuries were permanent, rendering them unemployable (*see Williams v Turner Constr.*, 2 AD3d 217, 217 [2003]; *Djelosaj v Gaines Serv. Leasing Corp.*, 237 AD2d 223, 224 [1997]).

Kruzynski's claim for lost wages is not barred by the Court of Appeals' decision in *Balbuena v IDR Realty LLC* (6 NY3d 338

---

\* Even though the verdicts were not reduced to a judgment, and the trial court did not specifically address the amount of the awards in its order setting the verdicts aside, that order necessarily brings up for review on this appeal the appropriateness of the damages awards, which both sides briefed.

[2006]), a case relied on by defendants both in the trial court and on appeal. *Balbuena* held that a plaintiff's presence in this country without authorization, standing alone, is insufficient to deny a claim for lost earnings (6 NY3d at 361). Here, however, there is no evidence in the record as to Kruzynski's immigration or citizenship status and thus, *Balbuena* is inapplicable.

Nevertheless, defendants maintain that lost earnings cannot be awarded where a plaintiff submits a false document to his employer. In support, they point to language in *Balbuena* where the court concluded that "in the absence of proof that [the] plaintiffs tendered false work authorization documents to obtain employment, . . . IRCA [the Immigration Reform and Control Act of 1986 (8 USC § 1324a *et seq.*)] does not bar maintenance of a claim for lost wages by an undocumented alien" (6 NY3d at 363). There was no evidence at trial, however, that Kruzynski filed false employment documents or otherwise violated IRCA. Indeed, there was no testimony at all as to how Kruzynski obtained any of his jobs.

Defendants misconstrue the record in making this argument. At trial, Kruzynski testified as to what his social security number is, and a review of his W-2s introduced into evidence shows this number on those documents. Although he used what he termed "a temporary number from the IRS" and not his social security number on some of his tax returns, that fact alone does not establish that he filed any false work authorization documents. Thus, the language in *Balbuena* cited by defendants is not implicated here and we need not determine, on this appeal, what the consequences would have been if Kruzynski had submitted a false document to obtain employment.

The jury's awards for past and future pain and suffering are excessive and must be reduced to the extent indicated. The evidence demonstrated that each of the plaintiffs had substantially similar symptoms, including memory loss, headaches, fatigue, loss of appetite, aching joints and muscles, depression, loss of libido and night sweats. Kruzynski further experienced tremors, spasms, nervousness, weakness, numbness in his extremities, motor control problems, stomach pain, suicidal ideation and trouble sleeping. Belzek experienced loss of concentration, weakness, suicidal ideation, stomach pain, numbness in his extremities, nausea, dizziness and a decline in general intellectual functioning. Wilson suffered from shaking episodes, loss of concentration, difficulty sleeping, tremors, spasms, nervousness and a decline in general intellectual functioning, learning, processing speed, verbal abilities and visual perception.

Although these injuries are serious and permanent, we find that the jury's awards for past and future pain and suffering deviate materially from what would be reasonable compensation under the circumstances (CPLR 5501 [c]; *Donlon v City of New York*, 284 AD2d 13 [2001]) as measured by awards approved in similar cases (*see Paek v City of New York*, 28 AD3d 207 [2006], *lv denied* 8 NY3d 805 [2007]; *Reed v City of New York*, 304 AD2d 1 [2003], *lv denied* 100 NY2d 503 [2003]). Additionally, Wilson died a year and a half after the trial and plaintiff's representative concedes that his award for future pain and suffering must be reduced accordingly. Defendants' claim that they are entitled to a new trial on Wilson's damages because he died from cancer after the trial is not properly before us because it is based on facts not in the record.

Defendants may seek relief before the trial court with regard to collateral source setoffs and calculations regarding the future damages awards (*see* CPLR 4545 [c]; 5041 [e]). We have considered defendants' remaining contentions and find them unavailing. Concur—Saxe, J.P., Sweeny, Moskowitz, Acosta and Richter, JJ.