[851 NYS2d 558]

The People of the State of New York, Appellant, v Roy Gray, Respondent.

First Department, February 26, 2008

## APPEARANCES OF COUNSEL

*Robert T. Johnson, District Attorney*, Bronx (*Stanley R. Kaplan* and *Joseph N. Ferdenzi* of counsel), for appellant.

*Edith Blumberg*, Norwich, for respondent.

### OPINION OF THE COURT

KAVANAGH, J.

After defendant was identified as being involved in the shooting death of Levi Bernard, New York Police Detective Michael DePaolis contacted the police department in Wilson, North Carolina, where defendant was believed to be located, and requested that defendant be taken into custody for an unrelated narcotics charge for which a warrant had been issued for his arrest. After learning that defendant had been apprehended, Detective DePaolis traveled to North Carolina for the purpose of returning defendant to New York on the narcotics charge and questioning him concerning his alleged involvement in the death of Mr. Bernard.

At the police station in Wilson, Detective DePaolis orally advised defendant of his *Miranda* rights.* Shortly thereafter, defendant told DePaolis that he was going to take the blame for this murder because his brother had served enough time in his life. Detective DePaolis again advised defendant of his *Miranda* rights, this time using a form provided by the Wilson Police Department. The form read as follows:

## YOUR RIGHTS

Before we ask you any questions, you must understand your rights:

---

* What was actually said by DePaolis—and defendant's responses—was not developed at the hearing held on defendant's motion to suppress.

(1) You have the right to remain silent and not make any statement. _____

(2) Anything you say can be and may be used as evidence against you in court. _____

(3) You have the right to talk with a lawyer before questioning and to have a lawyer with you while you are being questioned. _____

(4) If you want a lawyer before or during questioning but cannot afford to hire a lawyer, one will be appointed to represent you at no cost during questioning. _____

**I have read or had read to me this statement of my rights, and I understand what my rights are**.

Signed: _____

Date: _____

Time: _____

After each question was read to defendant by Detective DePaolis, defendant by hand wrote "yes" on the form at the end of each question and initialed "RG" in the space provided. At the end of the form, defendant signed his name, acknowledging that the statement of his rights had been read to him and that he understood what his constitutional rights were.

Even though defendant had at this point clearly and unequivocally waived his rights and expressed the desire to speak with the detective concerning the circumstances surrounding the death of Mr. Bernard, Detective DePaolis decided to wait until he received an official form employed by the New York City Police Department for this purpose. Forty-five minutes later, the form in question was received by fax and once again, Detective DePaolis took defendant through each of the questions listed on the form and defendant once again acknowledged understanding his rights and expressed a willingness to waive them and speak to the police. It was at that point in the interrogation, according to the record below, that defendant for the first time admitted being personally involved in the murder of Mr. Bernard.

It is uncontroverted that defendant's written statement admitting his personal involvement in this shooting was procured some 45 minutes after he initially offered to take the blame for the crime to spare his brother more time in prison. The record is bare of any suggestion that the police at any time during this 45-minute period asked defendant any questions regarding the homicide or in any way attempted to exploit defendant's initial willingness to assume responsibility for the killing and absolve his brother of any wrongdoing. As such, this 45-minute period before defendant gave his written statement and admitted involvement in this homicide represented a definite pronounced break in the interrogation and served to dissipate any taint that may have existed as a result of any defects in Detective DePaolis's initial effort to advise defendant orally of his rights under *Miranda* (*People v Paulman*, 5 NY3d 122, 130-131 [2005]; *People v Samuels,* 11 AD3d 372 [2004], *lv denied* 4 NY3d 802 [2005]). Furthermore, the only event between defendant's initial statement about "tak[ing] the blame" for his brother and the formal waiver based upon the New York City rights form was the additional full and adequate administration of rights based on the North Carolina form. This could only have further reinforced defendant's awareness of his constitutional rights.

It must also be noted that defendant's initial statement to the police—that he would take the blame for the shooting to absolve his brother—was on its face ambiguous, and is not necessarily an admission by defendant of any wrongdoing. More importantly, in the context within which it is given, it suggests that defendant was willing, if not eager, to talk to the police concerning the circumstances surrounding this shooting.

Finally, defendant's decision to speak to the police—and whether it was made after a full and fair appreciation of his constitutional rights—must be viewed in the context of defendant's extensive 10-year criminal record during which defendant had been arrested on at least eight different occasions (*People v Harris*, 79 AD2d 615 [1980], *lv denied* 53 NY2d 708 [1981]). "[D]efendant's extensive prior contacts with police" (*id.* at 616) only reinforce the conclusion that defendant, when he chose to speak to the police, did so of his own volition, and only after he had made a calculated and voluntary waiver of all of his constitutional rights. For this reason, the motion to suppress the statement should have been denied.

Supreme Court suppressed the written statement on the grounds that the People failed to establish the content of the

initial, oral *Miranda* warnings, or that defendant waived his rights at that juncture, and that the written statement was not attenuated from the original oral statement. We conclude that, regardless of the validity of the oral warnings and waiver, the written statement was sufficiently attenuated to be admissible. We also conclude that the record fails to support defendant's assertion that the prosecutor conceded the lack of attenuation.

Accordingly, the order of Supreme Court, Bronx County (Seth L. Marvin, J.), entered on or about December 21, 2006, which, insofar as appealed from, granted defendant's motion to suppress his written statement, should be reversed, the motion to suppress denied, and the matter remanded for further proceedings. The appeal from the order of the same court and Justice, entered on or about February 26, 2007, which, among other things, denied the People's motion for renewal, should be dismissed as academic in light of the foregoing.

LIPPMAN, P.J., ANDRIAS, WILLIAMS and BUCKLEY, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about December 21, 2006, reversed, defendant's motion to suppress denied, and the matter remanded for further proceedings. Appeal from order, same court, entered on or about February 26, 2007, dismissed as academic in light of the foregoing.