[999 NE2d 1149, 977 NYS2d 704]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOCELYN CLERMONT, Appellant.

Argued September 11, 2013; decided October 22, 2013

APPEARANCES OF COUNSEL

*Lynn W.L. Fahey, Appellate Advocates*, New York City (*Allegra Glashausser* of counsel), for appellant.

*Richard A. Brown, District Attorney*, Kew Gardens (*Suzanne H. Sullivan* and *John M. Castellano* of counsel), for respondent.

**OPINION OF THE COURT**

MEMORANDUM.

The order of the Appellate Division should be modified by remitting to Supreme Court for further proceedings in accordance with this memorandum and, as so modified, affirmed. In the event defendant prevails on the suppression issue, the conviction should be vacated and the indictment dismissed; alternatively, if the People prevail, the judgment should be amended to reflect that result.

Defendant was charged with weapon possession offenses after he was found in possession of a gun as a consequence of a street

encounter with the police. Three days before the suppression hearing, his assigned counsel made an application to be relieved as counsel, stating that his associate had quit, he was overwhelmed with work and could not competently represent defendant. Counsel restated these concerns on the record before the hearing commenced and the court stated that the motion would be granted after counsel completed the hearing. Thereafter, the hearing ensued, the court denied suppression, new counsel was appointed and the case proceeded to trial where defendant was convicted of criminal possession of a weapon in the second and third degrees.

On appeal, defendant sought reversal of his conviction based on the ineffective assistance of his first attorney. The Appellate Division affirmed the judgment in a divided decision (95 AD3d 1349 [2d Dept 2012]). The majority concluded that counsel's representation had not fallen below the constitutional standard but the dissent disagreed, reasoning that multiple errors by the attorney in relation to defendant's suppression application warranted remittal of the case to Supreme Court. The Appellate Division dissenter granted defendant leave to appeal to this Court (19 NY3d 1030 [2012]).

We agree with the dissent that defendant is entitled to relief. In his written motion requesting a hearing, counsel misstated the facts relating to the arrest, indicating that defendant had been involved in a motor vehicle stop rather than a street encounter with police. At the suppression hearing, the attorney did not marshal the facts for the court and made no legal argument. This, coupled with his failure to make appropriate argument in his motion papers or to submit a post-hearing memorandum, meant that the defense never supplied the hearing court with any legal rationale for granting suppression. Moreover, after the court issued a decision describing the sequence of events in a manner that differed significantly from the testimony of the police officer (the only witness at the hearing) and was adverse to the defense, defendant's attorney made no motion to reargue or otherwise correct the court's apparent factual error. Counsel never ascertained whether the court decided the motion based on the hearing proof or a misunderstanding of the officer's uncontradicted testimony.

And this is not a case where any of these errors can be explained as part of a strategic design (assuming one could be imagined), given that defense counsel asked to be relieved, informing the court that he was unable to provide competent

representation to defendant. Thus, although the attorney secured a hearing, his representation in relation to the application as a whole was deficient in so many respects—both before, during and after the proceeding—that defendant was not afforded meaningful representation at a critical stage of this prosecution.

The People contend that, even assuming counsel was deficient, the conviction should be affirmed because there is record support for the order denying suppression and defendant has failed to establish prejudice. We are unpersuaded. In this case it is not necessary for us to discuss the merits of the suppression issue to decide the ineffective assistance claim, other than to note that, on appeal, the parties have presented substantial arguments for and against suppression and the issue is close under our complex *De Bour* jurisprudence. The suppression motion could have been dispositive of the entire proceeding given that defendant was charged solely with weapon possession offenses stemming from his encounter with police and, had suppression been granted, the indictment would have been dismissed. In light of the litany of errors made by defense counsel, including the failure to offer legal argument concerning suppression or to attempt to correct the significant factual anomaly in the decision, our confidence in the fairness of the proceeding is substantially undermined. Relief is therefore appropriate under our meaningful representation standard, which does not invariably require a strict showing of prejudice (*People v Stultz*, 2 NY3d 277, 284 [2004]). We conditionally modify the judgment by remitting this matter to Supreme Court for further proceedings on the suppression application, to include legal argument by counsel for both parties and, if defendant so elects, reopening of the hearing.

RIVERA, J. (dissenting). I do not consider this issue "close under our complex *De Bour* jurisprudence" (majority mem at 934). Based on the record before us, the detective's testimony makes clear that, as a matter of law, suppression is warranted. To say that Supreme Court could have concluded otherwise and found requisite reasonable suspicion is to say that Supreme Court could have committed reversible error by reaching a legal conclusion for which there is no record support. I would grant that branch of defendant's motion to suppress physical evidence and dismiss the indictment. Accordingly, I dissent.

Defendant was arrested and charged with criminal possession of a weapon. Prior to defendant's trial, counsel moved as part of

an omnibus motion to suppress the weapon, a gun seized shortly after defendant's arrest. However, in that branch of defendant's omnibus motion that sought suppression of physical evidence, counsel recited a wholly different factual scenario from the events actually leading up to defendant's arrest and the seizure of the gun. Counsel incorrectly stated that police officers approached defendant while he was seated in an automobile, and that after they forcibly removed him from the vehicle, a gun fell out onto the ground. This was a complete fiction. The correct facts were that the officers had observed defendant walking on the street, arrested him after a chase on foot, and seized the gun from a private yard near where he was arrested. Additionally, because counsel's legal argument was based on these incorrect facts, he also failed to tailor the legal standards to the specifics of defendant's case. Although counsel's motion papers stated that he was "unaware of many of the relevant facts necessary to [his] preparation of the defense," and requested permission to submit a post-hearing memorandum, "so that [he] might more effectively represent the interests of [defendant]," he never filed such memorandum.

Counsel thereafter sought to extricate himself from the case, apparently because he was unable to provide competent representation as a consequence of staffing issues in his office. Three days prior to the hearing on the suppression motion, defense counsel moved to be relieved from representing the defendant. He informed the court that due to his associate's unexpected resignation, he had an overwhelming amount of work, much of which involved matters that conflicted with his state cases. He stated that he did not have "sufficient time and/or resources to competently represent" all of his clients.

Counsel renewed his motion to withdraw on the morning of the hearing, stating that his practice was predominately in immigration law, and that he was scheduled for another criminal trial that very same day. The court did not rule on the motion, but instead asked counsel if he could proceed with the "hearing today and get the case to a trial posture." Counsel agreed to proceed, but informed the court that he would make his motion to be relieved at the end of the suppression hearing.

The People's sole witness at the suppression hearing was the arresting detective, a 10-year veteran of the New York City Police Department, currently assigned to the Queens Gang Squad, where he had worked for approximately six years. He testified that on the night of defendant's arrest, at about 9:15 p.m., he

was driving an unmarked police car on a routine patrol of an area in Queens, known to the police as a "gang location." The detective was on patrol with his partner when he observed defendant and another man walking down the street. He saw defendant make what the detective described as "constant adjustments to his right waistband area." He then stopped the car, got out, displayed his shield and identified himself to the defendant. Defendant turned and ran away, and the detective ran after him down a driveway and through a backyard area. During the chase, the detective saw defendant take a gun from his waistband area and throw it to the ground. The detective caught defendant, arrested him and retrieved the gun from the yard where it had been tossed.

Upon cross-examination, defense counsel's only questions regarding the events leading up to the officer's foot chase of the defendant focused on why the officers were patrolling the neighborhood and whether defendant was alone. Counsel did not call any witnesses, did not make an opening or closing statement, and in response to the court's inquiry as to whether he wished to be heard, counsel stated that he would rely on the record.

The court immediately issued an oral decision denying suppression of the gun, and informed counsel there would be a written decision forthcoming. The court then relieved defense counsel and asked him to appear at the next court date the following month, to transfer the case to new assigned counsel.

In its subsequent written order, the court made key incongruous statements and findings. The court's findings of fact correctly stated that defendant threw the gun to the ground while he was running from the detective. However, in its conclusions of law, the court stated that the detective's foot chase was justified because he had observed defendant throw the gun *prior* to the chase. This error was never corrected.

Defendant appeals from the Appellate Division order, and contends counsel's failure to present an unassailable argument, challenging the lawfulness of the detective's actions resulting in the foot chase and seizure of the gun, constitutes ineffective assistance of counsel. Defendant argues that because the police lacked reasonable suspicion to chase him, the gun would have been suppressed, and there would have been insufficient evidence to convict him of the sole charges of which he was found guilty, namely the weapons charges. I agree.

The right to the effective assistance of counsel is guaranteed by both the Federal and New York State Constitutions (*see* US

Const 6th Amend; NY Const, art I, § 6). Under the Federal Constitution, a defendant is entitled to representation that satisfies "an objective standard of reasonableness" (*Strickland v Washington*, 466 US 668, 688 [1984]). Under *Strickland,* a defendant claiming ineffective assistance of counsel "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*id.* at 694). Under our State's Constitution, to prevail on the claim that he was denied effective assistance of counsel, defendant must demonstrate that his attorney failed to "provide meaningful representation . . . [and] must demonstrate the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (*People v Caban,* 5 NY3d 143, 152 [2005] [internal quotation marks and citations omitted]). The state standard of meaningful representation does not require a defendant to fully satisfy the prejudice test of *Strickland.* Our State's prejudice component focuses on the fairness of the process as a whole, rather than its particular impact on the outcome of the case (*id.* at 155-156). Counsel's representation is "viewed in totality" (*People v Turner,* 5 NY3d 476, 480 [2005], citing *People v Baldi,* 54 NY2d 137, 147 [1981]). Under both the federal and state standards it is possible for a single error to constitute performance that "is so 'egregious and prejudicial' as to deprive a defendant of his constitutional right" (*Turner,* 5 NY3d at 480, citing *People v Caban,* 5 NY3d 143, 152 [2005], and *Murray v Carrier,* 477 US 478, 496 [1986]).

In *Turner* we held that the failure to raise a defense that is "clear-cut" and "completely dispositive," in the absence of a reasonable explanation, "is hard to reconcile with a defendant's constitutional right to the effective assistance of counsel" (5 NY3d at 481). The defense counsel in *Turner* failed to argue that prosecution for manslaughter as a lesser-included offense was barred by a five-year statute of limitations; we therefore concluded counsel was ineffective. Defendant here analogizes his case to *Turner,* claiming that his counsel failed to assert a dispositive argument that the police did not have justification to chase him, and that this argument would have ensured the suppression of the gun and the dismissal of the charges. I agree.

In order to justify police pursuit, the officers must have "reasonable suspicion that a crime has been, is being, or is about to be committed" (*People v Holmes,* 81 NY2d 1056, 1058 [1993]). Reasonable suspicion encompasses a "quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person]

under the circumstances to believe criminal activity is at hand" (*People v Martinez*, 80 NY2d 444, 448 [1992] [citation omitted]). We have found that "[f]light, combined with other specific circumstances indicating that the suspect may be engaged in criminal activity, could provide the predicate necessary to justify pursuit" (*Holmes*, 81 NY2d at 1058). "Flight alone, however, or even in conjunction with equivocal circumstances that might justify a police request for information, is insufficient to justify pursuit" (*id.* [citations omitted]).

Nearly two decades ago, in a case on all fours with the present appeal, we held that flight in combination with a defendant grabbing at his waistband, "does not support a determination that the officers had reasonable suspicion to pursue defendant" (*see People v Sierra*, 83 NY2d 928, 930 [1994]). In *Sierra*, we found no reasonable suspicion to pursue a fleeing defendant where "the officers knew *only* that, after exiting from the back seat of a livery cab that had been stopped for defective brake lights, defendant grabbed at his waistband" (*id.* [emphasis added]).

Years later, we reiterated that flight must be accompanied by other suggestive conduct in order to support reasonable suspicion justifying a seizure (*People v Pines*, 99 NY2d 525, 527 [2002], citing *Martinez*, 80 NY2d at 447-448). In *Martinez*, we acknowledged that the "[d]efendant had a right to refuse to respond to a police inquiry and his flight when the officers approached could not, in and of itself, create a reasonable suspicion of criminal activity" (*id.* at 448 [citation omitted]). Only after aggregating other compelling circumstances—namely that defendant was observed "removing an instrument known to the police to be used in concealing drugs"—did we find reasonable suspicion (*id.*).

In *Pines*, police in an unmarked police vehicle followed defendant and his companion. Noticing the police, defendant continued down the street, but his gaze remained fixed upon the trailing police vehicle. When the police came closer, defendant "maneuvered in such a way as to keep his right side out of the view of the officers until, when the [police] drove up parallel to the two, defendant abruptly turned and began walking in the opposite direction abandoning his companion" (99 NY2d at 526). We held this suspicious behavior, coupled with "defendant plac[ing] his right arm against the side of his bubble jacket bunching it up by reaching underneath with his hand in a cupping motion, reminding the testifying officer of how he himself

would sometimes adjust a gun under a jacket," was sufficient to support reasonable suspicion (*id.*).

Here, the detective testified at the suppression hearing that he observed defendant adjusting his waistband. By the detective's own testimony, there was absolutely no indicia of a weapon or criminal activity. There was no cupping motion, bunched up jacket suggestive of a concealed weapon, no disconcerting facial movements, such as bulging eyes, or an attempt to hide by the defendant to conceal his movements from the police. This case is not analogous to *Pines*; there, police were faced with substantially more facts warranting "an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity [was] at hand" (*Martinez*, 80 NY2d at 448 [citation omitted]).

The People seek to distinguish the defendant's case from our prior case law, by arguing that defendant's presence in an area known for gang activity, along with the waistband adjustments, justify the police conduct. However, we have previously rejected the argument that presence in a high crime vicinity alone justifies a police encounter (*see People v McIntosh*, 96 NY2d 521, 526-527 [2001] ["(t)he fact that an encounter occurred in a high crime vicinity, without more, has not passed *De Bour* and *Hollman* scrutiny"]). Our concern as to sweeping assumptions concerning individuals in particular neighborhoods is not new, or unfounded:

> "Arrests are made of individuals, not of neighborhoods. When we single out the latter, more likely than not congested areas peopled in the main by those who are socially and economically deprived, we subject all its residents, the vast majority of whom are sure to be free of criminal taint, to an immeasurably greater risk of invasion than those who live elsewhere" (*People v McRay*, 51 NY2d 594, 606-607 [1980, Fuchsberg, J., concurring]).

Faced with what was a strong and compelling defense, counsel's failure to properly challenge the detective's lack of reasonable suspicion was not merely poor judgment or a harmless mistake. It was the error that mattered most because it allowed the People to proceed to trial with the single most important piece of evidence, the gun that was the basis for the weapons possession charges.

This case, like *Turner*, involves an error by counsel of such magnitude that on its own deprived defendant of his rights to a

level of constitutionally acceptable representation, and evinced an egregious breach of minimal professional standards. Such error, again, is very rare. In *People v McGee* (20 NY3d 513 [2013]), we found counsel was not ineffective where he failed to move to dismiss an indictment based on insufficient evidence. Distinguishing *Turner*, we found counsel was not ineffective for failing to raise the sufficiency argument because it could not be "fairly characterized as clear-cut and dispositive in defendant's favor" (*id.* at 518, citing *People v Brunner*, 16 NY3d 820, 821 [2011], and *People v Borrell*, 12 NY3d 365, 369 [2009]). Similarly, in *Borrell*, defendant was convicted on two separate occasions, after jury verdict, and sentenced simultaneously to two consecutive terms in prison. Counsel had failed at sentencing to contest the legality of the sentences. Finding the argument's merit had "far from clear prospects," we held "[c]ounsel was not ineffective for failing to raise an issue of such uncertain efficacy" (12 NY3d at 369). In *Brunner*, defendant argued counsel failed to make a meritorious argument under CPL 30.30. We found "although defendant's arguments . . . are substantial, there is nothing clear cut about . . . his claim[;] its success . . . depended on the resolution of several novel issues" (16 NY3d at 821).

On the face of the record, defendant's argument was both clear-cut and dispositive in defendant's favor (*cf. McGee*, 20 NY3d at 518; *Borrell*, 12 NY3d at 369; *and Brunner*, 16 NY3d at 821). The argument that the police lacked reasonable suspicion to pursue him would have, as a matter of law, resulted in the suppression of the gun (*see People v Wilkerson*, 64 NY2d 749, 750 [1984] ["if the evidence is discovered as a direct consequence of the unlawful police conduct, then it must be suppressed"]). There is simply no record support for a contrary finding. Moreover, there is no reasonable explanation for counsel's failure to raise this argument.

The majority and I agree that counsel's conduct was constitutionally deficient, and that defendant is entitled to relief. This is where our agreement ends because I believe that there is no legal support for denying the motion to suppress, and therefore the indictment must be dismissed. As I have explained, this is not the close call the majority believes it to be.

The majority's decision to remit to allow new counsel to argue the merits of suppression on the existing record or, if the defendant so chooses, to reopen the hearing, is based on the assumption that the People's case has merit. It simply does not.

However, having signaled that it does, it has strengthened the People's position, and as a consequence undermined the defendant's arguments. Selecting to proceed on the existing suppression record thus is a dangerous proposition for the defendant. Choosing alternatively to reopen the hearing is a course no less perilous for the defendant. As we stated in *People v Havelka*, "[a] remand with the benefit of hindsight derived from an appellate court opinion offers too facile a means for establishing probable cause after the event . . . Tailoring the evidence at the rehearing to fit the court's established requirements, whether done unconsciously or otherwise, would surely be a considerable danger" (45 NY2d 636, 643-644 [1978]). Essentially, this second "bite at the apple" allows the People to shore up their case.

The majority concludes that a person standing on the street, who makes the most innocent of movements—in this case adjusting a waistband—is subject to inquiry simply because that person is walking in a neighborhood known to the police for its gang activity. I cannot agree with the underlying assumption that persons stopped by police in such an area of the community are more likely to be engaged in criminal activity than those who walk or live in any other neighborhood. We have already rejected this assumption and today's decision ignores the wisdom of our prior case law. I dissent.

Judges GRAFFEO, READ, SMITH, PIGOTT and ABDUS-SALAAM concur; Judge RIVERA dissents in an opinion in which Chief Judge LIPPMAN concurs.

Order modified by remitting to Supreme Court, Queens County, for further proceedings in accordance with the memorandum herein and, as so modified, affirmed.