# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1204**

**KA 10-01363**

PRESENT: SMITH, J.P., CENTRA, FAHEY, LINDLEY, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

LEROY CARVER, DEFENDANT-APPELLANT.

---

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (JANET C. SOMES OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (ERIN TUBBS OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Monroe County (David D. Egan, J.), rendered April 22, 2010. The judgment convicted defendant, upon a jury verdict, of burglary in the second degree (two counts).

It is hereby ORDERED that the judgment so appealed from is affirmed.

Memorandum: On appeal from a judgment convicting him following a jury trial of two counts of burglary in the second degree (Penal Law § 140.25 [2]), defendant contends that he was deprived of effective assistance of counsel. According to defendant, his attorney was ineffective because, among other reasons, he failed to move for suppression of evidence obtained by the police following an allegedly unlawful arrest. We reject that contention. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's failure to pursue 'colorable' claims" (*People v Garcia*, 75 NY2d 973, 974, quoting *People v Rivera*, 71 NY2d 705, 709; *see People v Willis*, 105 AD3d 1397, 1397, *lv denied* 22 NY3d 960; *People v Carnevale*, 101 AD3d 1375, 1378-1379). "A single error may qualify as ineffective assistance, but only when the error is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial" (*People v Caban*, 5 NY3d 143, 152; *see People v Atkins*, 107 AD3d 1465, 1465, *lv denied* 21 NY3d 1040).

Here, the evidence adduced at trial demonstrates that, at approximately 4:30 on the morning in question, defendant was the front seat passenger in a vehicle that was stopped in the Village of Fairport by a police officer who observed an object hanging from the vehicle's rear view mirror, in violation of the Vehicle and Traffic Law. The only other person in the vehicle with defendant was the

driver.  Neither defendant nor his companion could produce any identification, and both gave the officer what turned out to be false names, dates of birth and addresses.  The officer noticed that the two men appeared to be "very nervous and anxious," and he observed in the back seat several large duffel bags, black gloves and a laptop computer.  When asked what they were doing in the area, the men said that they had been sitting in the parking lot of a nearby bar since it closed several hours earlier.  The officer had been patrolling the village for hours, however, and knew that the parking lot had been empty since 2:30 a.m.

The officer told the men to remain in the vehicle while he returned to his patrol vehicle to run a records check.  When the officer entered the police vehicle, the driver fled on foot.  The officer then ran back to the vehicle, where he observed that defendant had removed his seat belt and was attempting to exit the vehicle.  The officer detained defendant and conducted a pat frisk, during which the officer found a digital camera and a tube of lip balm in the coat defendant was wearing.  Upon looking inside the vehicle, the officer observed a wallet, a second pair of black gloves and a long screwdriver, all of which were on the floor in front of where defendant had been seated.  While defendant was detained, the police searched unsuccessfully for the driver, but learned that two houses in Fairport had recently been burglarized.  It was later determined that the digital camera and lip balm found in defendant's coat were taken from the homes that had been burglarized, as was the wallet found in the vehicle.  A search of the vehicle yielded numerous other items of stolen property.  While at the police station, the police took defendant's DNA from a discarded cigarette, and then later compared his DNA to that on the gloves found in the front seat area of the vehicle.  The tests showed that defendant could not be excluded as the person who wore the gloves, and that it was highly unlikely that someone other than defendant contributed to the DNA found on the gloves.

Defendant contends that his trial attorney was ineffective for failing to seek suppression of the digital camera, the lip balm and the DNA evidence.  More specifically, defendant contends that he had a colorable claim that the officer unlawfully arrested him immediately after the driver fled, and that the evidence constitutes fruit of the poisonous tree.  Defendant further contends that defense counsel had no strategic or legitimate reason for failing to pursue the suppression issue.

As a preliminary matter, we note that the record belies defendant's contention that the officer arrested him immediately after the driver fled; rather, the record establishes that the officer detained defendant for investigatory purposes (*see People v Roque*, 99 NY2d 50, 54; *People v Gonzalez*, 91 NY2d 909, 910).  It is well settled that the police may forcibly stop and detain an individual based on reasonable suspicion that the individual has committed or is about to commit a crime (*see People v Moore*, 6 NY3d 496, 498-499).  Here, when he detained defendant, the officer knew that the driver had fled, defendant and the driver had given a false answer when asked what they

were doing in the area, and neither could produce identification.  The officer had also observed that defendant, like the driver, attempted to exit the vehicle despite having been directed to remain seated, and that there were several duffel bags, a laptop computer and a pair of black gloves in the back seat.  The presence of gloves in the vehicle was unusual given that it was mid-summer.  Under the circumstances, and considering the hour, it was entirely reasonable for the officer to suspect that defendant was involved in criminal activity, thereby justifying a detention of defendant for investigatory purposes (*see People v Bolden*, 109 AD3d 1170, 1172, *lv denied* 22 NY3d 1039).  In fact, it would have been unreasonable for the officer to allow the defendant to walk away, particularly in view of the fact that he could produce no identification.

In any event, even assuming, arguendo, that defendant had a colorable basis to move for suppression of the camera, lip balm and DNA evidence, we cannot conclude on this record that defense counsel lacked a legitimate reason for failing to so move.  The remaining evidence demonstrated that defendant was in a motor vehicle containing numerous items of property that had recently been stolen from nearby homes, and thus such a motion would not have been dispositive.  One such item was a wallet that was found on the floor in front of where defendant had been seated, along with a second pair of black gloves and a long screwdriver.  In addition, the evidence established that the only other person in the vehicle with defendant fled on foot, and that defendant was attempting to exit the vehicle as well contrary to the officer's directive.

Under the circumstances, defense counsel may legitimately have concluded that, for defendant to be acquitted, he had to testify at trial and offer an innocent explanation for his presence in a vehicle that was full of property that had recently been stolen from nearby homes.  Defendant did in fact take the stand at trial, testifying that he was asleep in the vehicle while its occupants committed the burglaries without his knowledge, and that he woke up shortly before the vehicle was stopped by the police.  Notably, a defendant who testifies at trial may be impeached with suppressed evidence (*see United States v Havens*, 446 US 620, 624, *reh denied* 448 US 911; *People v Haynes*, 235 AD2d 365, 365, *lv denied* 89 NY2d 1012; *People v Dash*, 126 AD2d 737, 737).  Thus, because defendant testified, the jury would have learned about his possession of the camera and the lip balm even if defense counsel had successfully moved for suppression of that evidence.  The same is true for the DNA evidence.

We respectfully disagree with our dissenting colleagues that the threshold standard to be applied in determining whether an attorney was ineffective for failing to file a particular motion is "whether the motion at issue had more than little or no chance of success."  It is true, as the dissent points out, that the Court of Appeals has repeatedly stated that "[t]here can be no denial of effective assistance of trial counsel arising from counsel's failure to 'make a motion or argument that has little or no chance of success' " (*Caban*, 5 NY3d at 152, quoting *People v Stultz*, 2 NY3d 277, 287, *rearg denied* 3 NY3d 702).  By so stating, however, the Court was not articulating

the standard for what *does* constitute ineffective assistance of counsel; instead, the Court was explaining what *does not* constitute ineffective assistance of counsel.  As noted, the Court has made clear in other cases that the standard to be applied is whether defense counsel failed to file a "colorable" motion and, if so, whether counsel had a strategic or legitimate reason for failing to do so (*Garcia*, 75 NY2d at 974; *Rivera*, 71 NY2d at 709).  Although neither the Court of Appeals nor the Appellate Division has defined "colorable" in this context, the term is elsewhere defined as "appearing to be true, valid, or right" (Black's Law Dictionary 301 [9th ed 2009]).  Federal courts have described a colorable claim as one that has " 'a fair probability or a likelihood, but not a certitude, of success on the merits' " (*San Jose Christian Coll. v City of Morgan Hill*, 360 F3d 1024, 1032; *see Axson-Flynn v Johnson*, 356 F3d 1277, 1295; *see also Combs v Homer-Ctr. Sch. Dist.*, 540 F3d 231, 246, *cert denied* 555 US 1138).  Here, for the reasons previously stated, we do not believe that a motion to suppress evidence as the product of an unlawful arrest would likely have been granted.

Nor can we agree with the dissent that defendant on appeal contends that his trial attorney was also ineffective for failing to challenge the legality of the stop of the vehicle in which he was a passenger.  Defendant's brief focuses on the legality of the arrest, not the stop, and it repeatedly states that defendant was the passenger of a vehicle that was stopped for a traffic infraction committed by its driver.  Defendant never suggests that the driver did not in fact commit a traffic infraction.  In any event, the arresting officer testified at trial without contradiction that he stopped the vehicle because he observed an item hanging from the rear-view mirror and a sticker on the front windshield, both of which constitute violations of the Vehicle and Traffic Law.  If the officer's testimony in that regard is true, and there is no basis in the record for us to conclude otherwise, defendant had no grounds to challenge the legality of the stop.  We note that the dissent also asserts that, rather than moving for suppression, defense counsel proceeded to trial "on the specious theory that defendant had passed out in the car and had no idea that the people he was with shortly before the traffic stop had committed the burglaries."  That theory, however, was based on defendant's sworn trial testimony, and we cannot conclude that defense counsel was ineffective for allowing defendant to exercise his constitutional right to testify at trial.

We have considered the other alleged failings of defense counsel and conclude that they were not individually or collectively so significant as to deprive defendant of his right to effective assistance of counsel.  For instance, although defense counsel understated the significance of the People's DNA evidence during his opening statement, we do not perceive how defendant was thereby significantly prejudiced.  To the extent that defendant contends that defense counsel's apparent failure to understand the nature of the DNA evidence may have affected the advice counsel gave to defendant as to whether to accept the People's plea offer, such contention is based on "matters outside the record on appeal and thus is properly raised by

way of a motion pursuant to CPL article 440" (*People v Frazier*, 63 AD3d 1633, 1634, *lv denied* 12 NY3d 925). In sum, although defense counsel's performance at trial was by no means flawless, "[t]he test is reasonable competence, not perfect representation" (*People v Oathout*, 21 NY3d 127, 128 [internal quotation marks omitted]), and viewing the evidence, the law and the circumstances of the case as a whole and as of the time of the representation, we conclude that defendant was afforded meaningful representation (*see generally People v Baldi*, 54 NY2d 137, 147).

Finally, considering that defendant is a predicate felon and that Supreme Court could have but did not impose consecutive sentences on the two burglary counts, we perceive no basis upon which to exercise our power to modify the concurrent sentences as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [b]).

All concur except FAHEY and WHALEN, JJ., who dissent and vote to reverse in accordance with the following Memorandum: Inasmuch as defendant contends that he received ineffective assistance of counsel under both the federal and state standards, we apply the state standard for ineffective assistance of counsel (*cf. People v McDonald*, 1 NY3d 109, 114-115; *see generally People v Baldi*, 54 NY2d 137, 147). Applying that standard here, we conclude that defendant was deprived of his right to effective assistance of counsel, and we therefore respectfully dissent.

We first turn to the relevant facts of this case. The record establishes that defendant was the front seat passenger in a vehicle that was stopped by a police officer at approximately 4:30 a.m. for an alleged traffic infraction involving an obstructed windshield. That traffic stop eventually led to a pat frisk of defendant, which revealed a digital camera in the breast pocket of defendant's coat. The camera was the property of a Fairport resident whose home had just been burglarized, and a subsequent search of defendant's other pockets revealed many items of property stolen from two houses in Fairport that had been burglarized that morning. The police also found at defendant's feet on the floorboard of the vehicle, inter alia, a wallet belonging to a burglary victim, black leather gloves, and a long screwdriver.

Defendant was subsequently arrested and charged with both burglaries. While defendant was at the police station following his arrest, the police seized a cigarette butt that defendant had smoked and discarded, and the DNA on the cigarette matched the DNA on the gloves found at defendant's feet in the vehicle. Nevertheless, defendant's trial attorney did not seek suppression of the aforementioned physical evidence. Instead, defendant proceeded to trial with his trial attorney's inexplicable misunderstanding that there was a "one in 66,000 chance" that defendant's DNA was on the gloves—the evidence actually showed that the probability of randomly selecting an unrelated individual who could be a contributor to the DNA mixtures found on the gloves was less than one in 4,500 for the left glove and less than one in 6,090 for the right glove—and on the specious theory that defendant had passed out in the car and had no

idea that the people he was with shortly before the traffic stop had committed the burglaries.

We next turn to the breadth of defendant's primary contention on appeal. Defendant contends that he was denied effective assistance of trial counsel based on, inter alia, the failure of his trial counsel to raise a colorable suppression issue. To be sure, as the majority notes, the thrust of defendant's contention is that defense counsel was ineffective for failing to seek suppression of evidence obtained by the police following defendant's detention. However, as we read it, defendant's brief on appeal leaves open the possibility that his present contention with respect to ineffective assistance of counsel embraces the theory that defense counsel was ineffective in failing to seek suppression of *all* of the physical evidence against defendant on the ground that it was seized as a result of an unlawful traffic stop. In that vein, we respectfully disagree with the majority that defendant has conceded that the traffic stop at issue was lawful. Although defendant on appeal has acknowledged that a traffic stop based on the presence of an object obstructing or interfering with the view of the operator of the vehicle at issue through the windshield would be lawful (*see People v Robinson*, 97 NY2d 341, 349; *see also* Vehicle and Traffic Law § 375 [30]), in his appellate brief he was careful to question the impetus for the traffic stop, noting that such stop was occasioned by what, "according to the [subject] officer," were objects that appeared to obstruct the windshield of the vehicle at issue.

We now turn to the standard of review. The majority implicitly shuns the rule of this Court articulated in, inter alia, *People v Bassett* (55 AD3d 1434, 1437-1438, *lv denied* 11 NY3d 922) that, to prevail on a claim for ineffective assistance of counsel based on the failure to make a motion, a " 'defendant must show that the particular motion, if made, would have been successful and that defense counsel's failure to make that motion deprived him [or her] of meaningful representation.' " We explicitly reject it here. In our view, the rule articulated in *Bassett* and its antecedent and descendent cases is rooted in *People v Torrence* (135 AD2d 1075, 1076, *lv denied* 70 NY2d 1011), wherein we rejected the defendant's contention that he was denied effective assistance of counsel, reasoning that "a dismissal motion on speedy trial grounds, if made, would not have been successful." That conclusion—essentially that the defendant was not denied meaningful representation because the motion in question would have failed—is consistent with what is now the prevailing view that an attorney's "failure to 'make a motion or argument that has little or no chance of success' " does not amount to ineffective assistance (*People v Caban*, 5 NY3d 143, 152, quoting *People v Stultz*, 2 NY3d 277, 287, *rearg denied* 3 NY3d 702).

*Bassett*, however, stakes a more extreme position. The circumstances in which counsel will *not* be ineffective for failing make a motion have been set forth by the Court of Appeals, i.e., where the motion has little or no chance of success (*see Caban*, 5 NY3d at 152), and where there is a "strategic or other legitimate explanation[] for counsel's failure to [make] a particular [motion]"

(*People v Rivera*, 71 NY2d 705, 709).  In our view, *Bassett* mandates that a showing of success is essential to succeed on a claim for ineffective assistance based on counsel's failure to make a motion. That analytical approach is incompatible with New York's existing jurisprudence, and we therefore would no longer follow those cases that adopt that approach.  Rather, we conclude that the appropriate litmus test here is whether the motion at issue had more than little or no chance of success and, if so, whether there is no strategic or other legitimate explanation for the failure to bring that motion (*see Caban*, 5 NY3d at 152; *Rivera*, 71 NY2d at 709; *cf. People v Clermont*, 22 NY3d 931, 934; *People v McGee*, 20 NY3d 513, 520; *see generally People v Carnevale*, 101 AD3d 1375, 1380-1381).

Applying that standard here, we conclude that defendant was denied effective assistance of counsel based on his counsel's failure to seek suppression of the evidence seized as a result of the alleged traffic infraction.  We note that the officer who effectuated the traffic stop allegedly observed the items giving rise to the alleged vehicle and traffic infractions while the vehicle in which defendant was a passenger was moving and under the cloak of darkness.  Given the totality of the circumstances here, we conclude that the motion had more than little or no chance of success (*cf. Carnevale*, 101 AD3d at 1379 n 2).

We also conclude that there is no strategic reason or other legitimate explanation for the failure of defendant's trial attorney to seek suppression of the physical evidence seized from defendant's person and from the vehicle at issue.  As a practical matter, under the circumstances of this case there was simply no reason to forego the suppression hearing inasmuch as it would have allowed defendant an opportunity to examine the officer who effectuated the traffic stop before trial and to bolt that officer to a narrative of the traffic stop and the police activity that ensued as a result of that stop. More importantly, a "suppression motion could have been dispositive of the entire proceeding" (*Clermont*, 22 NY3d at 934), because it is hard to conceive of how defendant would have been convicted of the burglaries had the physical evidence been suppressed.  In that vein, we respectfully conclude that the majority's analysis of what may have happened at trial and the theories defense counsel may have held with respect to the path to an acquittal are immaterial inasmuch as the trial would not have occurred had defendant prevailed upon a motion to suppress evidence seized as a result of the traffic stop on the ground that such stop was unlawful.  Consequently, under the circumstances of this case, the failure of defendant's trial attorney to challenge this evidence deprived defendant of meaningful representation, and we would therefore reverse the judgment and grant defendant a new trial.


Entered:  January 2, 2015                      Frances E. Cafarell
                                               Clerk of the Court