[49 NE3d 1180, 29 NYS3d 888]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROY GRAY, Appellant.

Argued February 11, 2016; decided March 31, 2016

*Richard M. Greenberg, Office of the Appellate Defender*, New York City (*Sara Gurwitch* of counsel), for appellant.

*Robert T. Johnson, District Attorney*, Bronx (*Justin J. Braun, Joseph N. Ferdenzi* and *Stanley R. Kaplan* of counsel), for respondent.

**OPINION OF THE COURT**

ABDUS-SALAAM, J.

Under the circumstances of this case, we hold that defendant's attorney did not deprive him of the effective assistance of counsel by declining to move to reopen the suppression hearing.

At the suppression hearing preceding defendant's murder trial, a police detective testified that, after receiving information implicating defendant in the murder, he interviewed defendant about the crime at a North Carolina police station, where defendant was being held by local authorities at the New York detective's request. The detective issued oral *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]) from memory at the start of the interview, and defendant initially stated that he wanted to take the blame for the crime because his half brother, an alleged accomplice in the murder, had spent enough time in prison already. The detective ceased questioning, read *Miranda* warnings from a form provided by North Carolina officers, waited 45 minutes to receive a New York Police Department (NYPD) *Miranda* form via fax and then issued *Miranda* warnings again from the NYPD form. After the 45-minute break and the issuance of those warnings, the detective resumed questioning defendant, eliciting defendant's statement that, inter alia, he had shot at the victim's groin and fled the scene without seeing what happened next, and his half brother had not shot at or harmed the victim. The detective wrote down this statement at defendant's request.

Based on the detective's description of the interrogation at the hearing, the hearing court granted defendant's motion to

suppress his initial statement and his post-break statement due to the detective's purported failure to issue a complete set of *Miranda* warnings at the outset of the interview. However, the Appellate Division reversed and denied the suppression motion, reasoning that defendant's second statement had been attenuated from the first, and it therefore remanded the case for trial (*see People v Gray*, 51 AD3d 63, 64-67 [1st Dept 2008]).

At the start of trial, the parties stipulated to the admission of defendant's first statement about taking the blame for the crime into evidence, as counsel wished to use that statement to suggest that defendant's second statement had been inaccurately transcribed and, at any rate, had stemmed from a desire to save his half brother. Later at trial, however, the detective who had interrogated defendant gave a different account of defendant's statements than the one set forth in his hearing testimony. In particular, the detective testified, while defendant had still said that he wished to take responsibility for the murder to exculpate his half brother, he also indicated that he had shot at the victim's groin, much as he did in his statement following the 45-minute break in the interview. In addition, prior to the break between defendant's two statements, the detective spoke to defendant for about an hour and 10 minutes, which was a longer period than was indicated by the detective's hearing testimony.

At a sidebar, defense counsel complained about the detective's revised account of defendant's first statement and asked that the detective instead limit his account of that statement to the information contained in his hearing testimony, and the court granted counsel's request. Thereafter, the detective testified consistently with his hearing testimony. At the end of trial, the jury returned a verdict convicting defendant of murder in the second degree (*see* Penal Law § 125.25 [1]), and the court later sentenced him to a prison term of 25 years to life.

Afterward, defendant filed a motion to vacate the judgment pursuant to CPL 440.10, alleging that defense counsel had rendered ineffective assistance by failing to move to reopen the suppression hearing based on the detective's trial testimony about his interview with defendant. The People opposed the motion, asserting that defense counsel had properly declined to move to reopen the hearing in light of his evident recognition that he could not have won suppression of defendant's second statement. Defense counsel filed an affidavit explaining his trial strategy. In sum and substance, counsel averred that he

had believed that defendant's second statement would almost certainly be admitted into evidence at trial and that therefore he had focused on using the exculpatory preface of the first statement to cast doubt on the probative worth of defendant's more incriminating subsequent comments. Supreme Court denied defendant's postjudgment motion without a hearing, finding that counsel had a legitimate strategic basis for declining to move to reopen the suppression hearing and that counsel's mistakes, if any, had not prejudiced defendant.

On a consolidated appeal from the order denying defendant's postjudgment motion and from the judgment, the Appellate Division affirmed (*see People v Gray*, 116 AD3d 480, 480-481 [1st Dept 2014]). The Appellate Division concluded that, regardless of whether counsel had a sound strategy, counsel had not been ineffective for declining to make fruitless renewed efforts to suppress defendant's second statement, as the detective's trial testimony still revealed that the second statement was clearly attenuated from the first (*see id.* at 480-481). A Judge of this Court granted defendant leave to appeal (24 NY3d 1084 [2014]), and we now affirm.

Defense counsel did not deprive defendant of the effective assistance of counsel when he decided not to move to reopen the suppression hearing based on the detective's trial account of the statement made by defendant prior to the issuance of the North Carolina *Miranda* warnings. Because the Appellate Division had rejected counsel's original arguments for suppression of the post-break statement prior to trial and cited a number of factors that remained extant throughout the proceedings in this case, counsel reasonably thought that the statement would be admitted into evidence regardless of any new developments, and instead of making what he sensibly thought was a long-shot motion to reopen the hearing, he decided to use the exculpatory portion of defendant's first statement to undermine the credibility of the second statement and place it in context.

Contrary to defendant's and the dissent's position (*see* dissenting op at 87-91), counsel properly recognized the highly remote possibility that the defense would have succeeded in convincing the court to reopen the suppression hearing and suppress the second, post-break statement. As a threshold matter, notwithstanding the dissent's protestation (*see* dissenting op at 88), it is not entirely clear that the court would have exercised its discretion to reopen the hearing (*see* CPL 710.40 [4]; *see People v Clark*, 88 NY2d 552, 555-556 [1996]). In that regard,

CPL 710.40 (4) grants a trial court discretion to permit a defendant to renew a motion to suppress evidence provided that the defendant shows "that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion." Here, when counsel told the trial court that "we," presumably referring to the defense, already "knew that [the detective] spoke at some length to [defendant]" before any proper *Miranda* warnings were given, counsel suggested that he was aware of the full extent of defendant's comments prior to the issuance of the North Carolina *Miranda* warnings, and therefore the detective's trial testimony about the entire conversation between him and defendant prior to those warnings may not have disclosed previously undiscovered or undiscoverable facts warranting a reopened hearing.

Moreover, at a reopened hearing, it was highly unlikely that the court would have suppressed the statement made by defendant following the issuance of the New York *Miranda* warnings. Significantly, the totality of the circumstances of the interrogation described by the detective at trial, including the detective's administration of some form of *Miranda* warnings at the start of the interrogation, the 45-minute break between defendant's two statements, the issuance of written *Miranda* warnings before and after the break, defendant's prior experience speaking to the police during his eight previous arrests and the mixed inculpatory and exculpatory nature of his statements, plainly showed that the post-break statement was voluntary and attenuated from the pre-break statement (*see People v Paulman*, 5 NY3d 122, 130-131 [2005]; *People v Chapple*, 38 NY2d 112, 115 [1975]; *cf. Missouri v Seibert*, 542 US 600, 611 [2004 plurality, Souter, J.]; *id.* at 620-622 [Kennedy, J., concurring]).* In light of the weakness of defense counsel's potential bid for suppression at a reopened hearing, counsel pursued a legitimate strategy in forgoing an unavailing motion to reopen the hearing and attempting to use the exculpatory part of defendant's pre-break statement to discredit the post-break statement in the eyes of the jury.

---

* It is true, as the dissent observes (*see* dissenting op at 89-90), that defendant made similar statements to the same detectives before and after the 45-minute break. However, as we have previously observed, no one factor or subset of factors is dispositive of the question of attenuation, and the totality of the circumstances here strongly indicated that the second statement was attenuated from the first (*see Paulman*, 5 NY3d at 130-131).

Notably, too, had counsel sought a reopened hearing, the detective would have had the opportunity to strengthen his account of the interrogation and the voluntariness of defendant's statements, potentially placing the People in a better position to undermine counsel's efforts to attack the credibility of the post-break statement at trial. Thus, counsel had a reasonable trial strategy, and defendant's current disagreement with it does not entitle him to relief on his ineffective assistance claim (*see People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Hogan*, 26 NY3d 779, 785 [2016]; *see generally People v Evans*, 16 NY3d 571, 576 [2011]; *cf. People v Clermont*, 22 NY3d 931, 933-934 [2013]). Finally, we have considered and rejected defendant's remaining claim. Accordingly, the order of the Appellate Division should be affirmed.

STEIN, J. (dissenting). Contrary to the majority's determination, I believe that the detective's trial testimony substantially undermined the prior suppression determination and that, under the facts of this case, defense counsel's failure to move to reopen the suppression hearing deprived defendant of the effective assistance of counsel. Therefore, I respectfully dissent.

## I.

The victim was tragically shot and killed in his home. Four people were eventually charged with crimes in connection with his death, including defendant and his half brother, who were tried separately. At a pretrial *Huntley* hearing (*see People v Huntley*, 15 NY2d 72 [1965]), Detective Michael DePaolis testified that, after he arranged to have defendant arrested in North Carolina on an open warrant, he and another detective traveled to North Carolina to interview defendant about the homicide. DePaolis testified to the following timeline at the hearing: first, he orally administered *Miranda* warnings to defendant (*see Miranda v Arizona*, 384 US 436, 467 [1966]); second, defendant told DePaolis "that he was going to take the blame for this murder because his brother had served enough time in his life"; third, DePaolis read defendant his *Miranda* rights from a North Carolina form; fourth, after waiting 45 minutes for a *Miranda* warnings form to be faxed from New York City, DePaolis read the New York City form to defendant and defendant waived his rights; and fifth, defendant made a written statement admitting that he, along with another person, shot the victim.

Supreme Court suppressed defendant's statements on the grounds that DePaolis had not explained which *Miranda* rights were given to defendant before his initial oral statement, there was no testimony that defendant had waived his *Miranda* rights before making that statement, and defendant's subsequent written admission was not sufficiently attenuated from his inadequately warned oral statement. The court denied the People's subsequent motion to reopen the hearing because, even if the initial *Miranda* warnings had been further explained by DePaolis, according to the People's motion papers, the warnings were still deficient because defendant was not informed that he would be provided with an attorney if he could not afford one, and there was still no basis for determining that defendant had waived his rights at that time. The People appealed the suppression order, certifying that, without defendant's statements, they lacked legally sufficient evidence to proceed to trial (*see* CPL 450.20, 450.50).

The Appellate Division reversed and denied defendant's motion for suppression of his written statement (51 AD3d 63 [1st Dept 2008], *lv denied* 10 NY3d 863 [2008], *cert denied* 555 US 1182 [2009]). The Appellate Division held that defendant's written statement was sufficiently attenuated from his oral statement because defendant *first* admitted his involvement in the murder only *after* the detective had read him the warnings from both the North Carolina and New York forms, with an intervening 45-minute break. The Appellate Division relied heavily on the fact that, according to DePaolis's hearing testimony, no questioning or, indeed, any communications—other than the reading of the *Miranda* warnings—occurred between the time of defendant's initial oral statement and his subsequent warned written statement (*see id.* at 66).

At trial, defense counsel pursued a strategy of persuading the jury that defendant's written statement was a false confession, as evidenced by his previous oral statement that he would take the blame for his brother. To a lesser degree, defense counsel also argued to the jury that the written statement was embellished by the transcriber, Detective DePaolis.

During DePaolis's trial testimony, he revealed that, after defendant made the oral statement referring to his brother, defendant was interrogated for over an hour, during which time he orally related to the detectives the substance of his subsequent written statement. Defense counsel objected to the detective's testimony about this second oral statement, noting

that it had not been explored at the suppression hearing. In response, the prosecutor asserted that the second oral statement was substantively identical to the written statement. The trial court pointed out several times that the Appellate Division had apparently been unaware of this second oral statement or the fact that defendant had been interrogated for over an hour before he made the written statement, and the trial court observed that the lack of such awareness was, "[i]n part[,] . . . the basis for the Appellate Division['s] finding that there was attenuation" between the initial oral statement and the subsequent written statement. Nevertheless, defense counsel did not move to reopen the suppression hearing to challenge the admissibility of the written statement despite the detective's testimony arguably defeating the basis for attenuation. Instead, defense counsel maintained that excluding reference to the second oral statement would "obviate any problems." The parties agreed to this course of action. The jury subsequently acquitted defendant of first-degree felony murder, but convicted him of second-degree intentional murder.

Defendant appealed and, while his appeal was pending, he moved, pro se, to vacate his conviction pursuant to CPL 440.10. Defendant argued, among other things, that trial counsel was ineffective for failing to move to reopen the *Huntley* hearing after DePaolis testified at trial. The People opposed defendant's motion, and proffered an affidavit from defendant's trial counsel, wherein he explained that his strategy at trial was to convince the jury that defendant's written statement was false because he gave it only in an attempt to shield his brother from liability. However, counsel did not explain why he failed to move to reopen the suppression hearing after the detective's trial testimony differed from that presented at the hearing and undermined the basis for the Appellate Division's resolution of the attenuation question in the People's favor.

Supreme Court denied defendant's motion—also without specifically addressing counsel's failure to move to reopen the suppression hearing—concluding that counsel had pursued a reasonable strategy at trial. In one order, the Appellate Division affirmed the denial of defendant's CPL 440.10 motion and the judgment of conviction and sentence (116 AD3d 480 [1st Dept 2014]). The Appellate Division acknowledged that the detective's trial testimony had revealed new material facts bearing on its earlier suppression determination. However, that Court held that, even assuming counsel lacked a strategic

basis for failing to move to reopen the suppression hearing, defendant was not prejudiced or deprived of meaningful representation because, "although the information that emerged at trial gave defendant a stronger argument that his written statement was not attenuated, it did not give him a winning one" (*id.* at 481).

A Judge of this Court granted defendant leave to appeal (24 NY3d 1084 [2014]).

## II.

In my view, defense counsel's failure to move to reopen the suppression hearing deprived defendant of review of a close suppression argument that, if successful, "could have been dispositive of the entire proceeding" (*People v Clermont*, 22 NY3d 931, 934 [2013]) in light of the People's certification that they lacked legally sufficient evidence to prosecute without defendant's statements (*see* CPL 450.20, 450.50). Further, to the extent that counsel's failure to move to reopen the hearing was based on a strategy, that strategy was unreasonable.

Pursuant to CPL 710.40 (4), a suppression motion may be renewed, even after trial has commenced, upon a showing "that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion." Generally, the decision of whether to grant a motion to reopen rests in the discretion of the trial court, but a defendant is not required to establish that the new facts are "outcome-determinative" or "essential" (*People v Clark*, 88 NY2d 552, 555-556 [1996]). The additional pertinent facts must merely be such that "would materially . . . have affected the earlier [suppression] determination" (*id.* at 555; *see People v Delamota*, 18 NY3d 107, 118-119 [2011]).

There can be no serious question that the revelation by DePaolis at trial that he had engaged in an hour-long interrogation of defendant between defendant's initial statement (that he would take the blame for his brother) and the time that defendant was given valid *Miranda* warnings was "material" to, and impacted upon, the Appellate Division's earlier denial of suppression. As the trial court readily observed, the Appellate Division's attenuation analysis relied, in large part, on the fact that defendant had made only a non-inculpatory, ambiguous, oral statement, and was not subjected to any significant interrogation, before the administration of proper *Miranda* warn-

ings preceding his written confession. Given the detective's trial testimony and the People's concession that the written statement merely memorialized the insufficiently warned oral statement of which the Appellate Division had no knowledge, defendant's argument that the written statement was not sufficiently attenuated was "considerably strengthened" by the facts revealed at trial (*Delamota*, 18 NY3d at 118). Far from a "longshot" (majority op at 82), defendant would have been entitled to a reopening of the suppression hearing had such a request been made.*

In evaluating the prejudice that flowed from defense counsel's failure to move for reopening, the Appellate Division erred by rejecting defendant's ineffective assistance claim based on its conclusion that defendant did not have a "winning" suppression argument (116 AD3d at 481). Certainly, "[t]here can be no denial of effective assistance of trial counsel arising from counsel's failure to 'make a motion or argument that has little or no chance of success' " (*People v Caban*, 5 NY3d 143, 152 [2005], quoting *People v Stultz*, 2 NY3d 277, 287 [2004]). However, where, as here, counsel fails to raise a close suppression issue, a defendant may establish that he or she was sufficiently prejudiced so as to undermine our confidence in the suppression proceedings (*see Clermont*, 22 NY3d at 934; *see generally Stultz*, 2 NY3d at 284).

It is undisputed that defendant was entitled to *Miranda* warnings before his initial statement and that, if those warnings were incomplete, the resulting statements must be suppressed (*see People v Hutchinson*, 59 NY2d 923, 924-925 [1983]). Even the warnings as recited in the People's motion to reargue the original suppression determination were deficient, and it is, therefore, unlikely that the People would have succeeded in establishing the adequacy of those warnings if the

---

* To the extent defense counsel indicated at trial that he was aware that DePaolis had spoken to defendant "informally," the record does not establish that defense counsel knew that there was an hour-long custodial questioning that resulted in defendant's oral confession to the shooting, as evidenced by counsel's concern that he did not know what DePaolis's testimony would be if he was permitted to explore defendant's second oral statement at trial. Furthermore, even assuming that defense counsel was aware of the pertinent facts, this would merely raise the question of whether counsel was ineffective for failing to move to reopen the suppression hearing or take other action immediately after the Appellate Division, relying on an apparently erroneous view of the facts, issued a decision reversing a critical suppression ruling in defendant's favor.

hearing had been reopened. In the event the People did not succeed in that regard, suppression of defendant's second oral statement and the subsequent written statement would have been required "unless there [was] such a definite, pronounced break in the interrogation that . . . defendant may be said to have returned, in effect, to the status of one who [was] not under the influence of questioning" (*People v Chapple*, 38 NY2d 112, 115 [1975]; *see People v Paulman*, 5 NY3d 122, 130 [2005]).

To determine whether a warned statement is sufficiently attenuated from an unwarned one, courts consider a number of factors, including

> "the time differential between the *Miranda* violation and the subsequent admission; whether the same police personnel were present and involved in eliciting each statement; whether there was a change in the location or nature of the interrogation; the circumstances surrounding the *Miranda* violation, such as the extent of the improper questioning; and whether, prior to the *Miranda* violation, defendant had indicated a willingness to speak to police" (*Paulman*, 5 NY3d at 130-131; *see People v White*, 10 NY3d 286, 291 [2008], *cert denied* 555 US 897 [2008]).

According to the facts as elicited at trial, defendant was given incomplete warnings, made the initial suppressible statement that he was going to accept blame, then orally inculpated himself during an hour-long interrogation, was given the North Carolina warnings, had only a 45-minute break, was read the warnings from the New York form and waived his rights, and then gave his written statement—the content of which the People admitted was exactly the same as the previous oral statement. Based on this timeline, defendant had a strong argument that his written statement was not attenuated from his suppressible oral statements (*see People v Bethea*, 67 NY2d 364, 368 [1986]; *compare People v Malaussena*, 10 NY3d 904, 905 [2008]).

Although the Appellate Division found that defendant's statement that he was willing to take the blame for his brother demonstrated an eagerness and willingness to speak to the police, we usually have found this factor to be met in cases where the defendant has voluntarily answered questions in a noncustodial setting, whereas, here, defendant was already under arrest and subjected to custodial interrogation at the

relevant time (*compare Paulman*, 5 NY3d at 131, *with Bethea*, 67 NY2d at 368). Moreover, as far as can be discerned from the record, defendant was interrogated in the same manner, by the same detectives, and in the same location during the questioning that elicited each of the statements at issue. In addition, the break was merely 45 minutes long and, while it is true that defendant was apparently given incomplete *Miranda* warnings twice before that break, the People conceded at trial that the written statement was the culmination of defendant's prior unwarned statements given over the course of the interrogation.

The Appellate Division also relied in its original attenuation analysis on the fact that defendant's initial unwarned statement was "ambiguous" and not necessarily inculpatory; however, the trial testimony demonstrated that, in fact, defendant had made an additional oral statement—confessing to shooting the victim—before receiving complete warnings and making the written statement. Thus, the Appellate Division's original attenuation determination was significantly undermined by the facts presented at trial regarding the circumstances of defendant's written confession, and it is questionable whether the remaining factors relied on by the Appellate Division to uphold that determination, such as defendant's criminal history, would have led to a finding that defendant was "returned, in effect, to the status of one who is not under the influence of questioning" (*Chapple*, 38 NY2d at 115). As a result, the detective's testimony at trial did not merely give rise to "a motion or argument that has little or no chance of success" (*Stultz*, 2 NY3d at 287). Rather, the revelation at trial signified that defendant had a significant and close argument for suppression, which should have prompted counsel to move to reopen the hearing (*see Clermont*, 22 NY3d at 934).

Nor, as the majority concludes, was there a reasonable trial strategy that could account for counsel's omission. Counsel's strategy—to use defendant's first statement, indicating that he would take the fall for his brother, to suggest to the jury that the written statement was false—simply cannot explain counsel's failure to move to reopen the suppression hearing. Defendant had nothing to lose and everything to gain by revisiting the suppression question. If suppression was granted, defense counsel would have no need to use the first oral statement to justify the written statement—which would not have been admissible at trial—and the People had already

certified that they lacked legally sufficient evidence without that statement. Indeed, suppression of the written statement had become even more critical by the time of trial because the People had discovered defendant's DNA on a hat found in the victim's room after the shooting. Defendant's half brother was excluded as a contributor to the DNA mixture, tending to disprove counsel's theory argued at trial that defendant's half brother was the shooter and that defendant had falsely confessed to protect him.

By contrast, if the suppression determination was upheld—either because the People demonstrated that valid *Miranda* warnings had been given, or because the court determined that the written statement was still sufficiently attenuated from the oral ones—defendant would have suffered no prejudice. The People maintained at trial that the oral statement contained only the same information as the written statement, and defense counsel's two theories of false confession and inaccurate transcription would have been just as available and effective if the second oral statement was admitted at trial. Thus, in my view, there was no "legitimate or reasonable tactical choice" to support counsel's actions, and counsel's failure to move to reopen the suppression hearing constituted ineffective assistance (*People v Caldavado*, 26 NY3d 1034, 1036 [2015]). Furthermore, because counsel's failure to move to reopen the suppression hearing significantly undermines confidence in the suppression determination, the appropriate remedy—rather than the Appellate Division making a de novo determination of the suppression question based on the limited facts revealed at trial—was remittal to the trial court for reopening of the suppression hearing (*Clermont*, 22 NY3d at 931; *see People v Bilal*, 27 NY3d 961, 961-962 [2016] [decided herewith]).

Chief Judge DiFiore and Judges Pigott, Rivera and Garcia concur; Judge Stein dissents in an opinion in which Judge Fahey concurs.

Order affirmed.