*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: July 16, 2015       106941
                                         106943
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                              MEMORANDUM AND ORDER

VINCENT CASSALA,
                    Appellant.
_____

Calendar Date:  May 26, 2015

Before:  Lahtinen, J.P., McCarthy, Rose and Clark, JJ.

_____

        DerOhannesian & DerOhannesian, Albany (Paul DerOhannesian
II of counsel), for appellant.

        P. David Soares, District Attorney, Albany (Vincent Stark
of counsel), for respondent.

_____

Rose, J.

        Appeals (1) from a judgment of the Supreme Court (Breslin,
J.), rendered May 16, 2012 in Albany County, upon a verdict
convicting defendant of the crimes of attempted rape in the first
degree, attempted rape in the third degree, criminal sexual act
in the first degree (two counts), criminal sexual act in the
third degree (two counts) and endangering the welfare of a child
(two counts), and (2) by permission, from an order of said court,
entered July 29, 2014, which denied defendant's motion pursuant
to CPL 440.10 to vacate the judgment of conviction, after a
hearing.

        Defendant was charged with engaging in a series of sexual

assaults against the then-15-year-old victim, including three separate instances in which he was alleged to have forcibly compelled her to submit to anal sexual intercourse. After a jury trial, defendant was acquitted of two counts arising out of one of the alleged instances of anal intercourse and convicted of attempted rape in the first degree, attempted rape in the third degree, two counts of criminal sexual act in the first degree, two counts of criminal sexual act in the third degree and two counts of endangering the welfare of a child. Supreme Court sentenced him to an aggregate prison term of 15 years followed by 10 years of postrelease supervision. Defendant then retained new counsel and moved to vacate the judgment on the ground that he had been deprived of the effective assistance of counsel (see CPL 440.10 [1] [h]). After a hearing, at which his former counsel testified, Supreme Court denied defendant's motion, prompting this appeal from both the judgment of conviction and, by permission, from the denial of his postconviction motion. We now reverse.

The effectiveness of the assistance of counsel is analyzed in terms of whether "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]; accord People v Benevento, 91 NY2d 708, 712 [1998]). To prove that he or she did not receive meaningful representation, a defendant must "demonstrate the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Clermont, 22 NY3d 931, 937 [2013] [internal quotation marks and citation omitted]; see People v Wheeler, 124 AD3d 1136, 1138-1139 [2015], lv denied 25 NY3d 993 [2015]). Because the test for attorney effectiveness is "reasonable competence, not perfect representation" (People v Oathout, 21 NY3d 127, 128 [2013] [internal quotation marks and citation omitted]; accord People v Chappelle, 126 AD3d 1127, 1129 [2015]), "a reviewing court must avoid confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis" (People v Benevento, 91 NY2d at 712 [internal quotation marks and citation omitted]; see People v Arnold, 85 AD3d 1330, 1333 [2011]). Here, the totality of the record reveals that, at crucial stages of the

representation, counsel inexplicably failed to investigate the victim's bleeding disorder, consult with and be prepared to call a medical expert on the subject, raise the issue during cross-examination of the People's medical expert, and to object to the testimony of defendant's former spouse regarding defendant's sexual preferences during their marriage. The cumulative effect of these prejudicial failures deprived defendant of the effective assistance of counsel and his right to a fair trial.

"[I]t is elementary that the right to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense" (People v Droz, 39 NY2d 457, 462 [1976]; accord People v Oliveras, 21 NY3d 339, 346-347 [2013]). Counsel failed defendant in this regard, as he conducted no investigation into the significance of the fact that the victim has Von Willebrand Disease (hereinafter VWD), a bleeding disorder.[1] At the CPL 440.10 hearing, counsel acknowledged that he had been aware that the report of the sexual assault nurse examiner (hereinafter SANE) noted that the victim had been diagnosed with a bleeding disorder, but that he was unfamiliar with the additional notation of VWD. Despite this, counsel admitted that he did no research on VWD, never consulted a medical expert on the subject and had no tactical reason for not doing so. Rather, counsel testified that he believed the victim's diagnosis to be an insignificant detail because defendant never mentioned it to him and the SANE report indicated that no signs of physical injury were observed.

Counsel's admitted failure to investigate the victim's bleeding disorder meant that he was unprepared to effectively cross-examine the SANE, with disastrous consequences for

_____

[1] According to the American College of Obstetricans and Gynecologists, VWD is "the most common inherited bleeding disorder among American women [and] is a common cause of . . . bleeding problems in women and adolescent girls." Symptoms of VWD include, among other things, "bleeding from minor cuts or abrasions."

defendant's case.  Aside from attempting to impeach the victim's credibility on cross-examination, which he did with some success, counsel relied heavily upon the absence of any objective findings of physical injury in the SANE report to support the theory that the victim had fabricated the allegations against defendant. However, it is clear from counsel's testimony at the CPL 440.10 hearing that he failed to recognize the detrimental effect of the SANE's opinion testimony, namely, that it is "common" to examine a victim of sexual abuse and observe no signs of physical injury. As a result, this opinion went completely unchallenged during the trial, and it effectively neutralized the otherwise persuasive force of the report's findings of no physical injury.

Had counsel sought to inform himself about the victim's VWD diagnosis, he likely would have become aware of medical experts such as Howard Snyder, a board-certified doctor of emergency medicine who submitted an affidavit in support of defendant's postconviction motion.  Snyder averred that "[t]he presence of VWD [in the victim] would have made the presence of bruising or bleeding during forceful, non-consensual anal intercourse more likely than in [a] patient without VWD."[2]  Undoubtedly, expert testimony similar to Snyder's would have done much to increase the significance of the SANE report's lack of physical findings and would have provided a powerful basis for cross-examination to counter the damaging effects of the SANE's opinion testimony.

Counsel's failings were magnified by the fact that the People's only direct evidence of defendant's guilt was the victim's testimony, making counsel's efforts to undermine her credibility of paramount importance.  Indeed, there were no other witnesses to the alleged sexual assaults and no DNA evidence was recovered.  In similar situations, the Second Circuit, applying New York law, has repeatedly held that "when a defendant is accused of sexually abusing a child and the evidence is such that the case will turn on accepting one party's word over the

_____

[2]  We note that the People submitted no responsive documentary evidence or information tending to refute such allegations (see CPL 440.30 [1] [a]).

other's, the need for defense counsel to, at a minimum, consult with an expert to become educated about the vagaries of abuse indicia is critical.  The importance of consultation and pre-trial investigation is heightened where, as here, the physical evidence is less than conclusive and open to interpretation" (Eze v Senkowski, 321 F3d 110, 129 [2d Cir 2003] [internal quotation marks and citations omitted]; accord Gersten v Senkowski, 426 F3d 588, 608-609 [2d Cir 2005], cert denied sub nom. Artus v Gersten, 547 US 1191 [2006]; see Pavel v Hollins, 261 F3d 210, 223-225 [2d Cir 2001]; Lindstadt v Keane, 239 F3d 191, 201-202 [2d Cir 2001]).[3]  Thus, the record establishes that, without any justification, counsel prejudiced defendant by "s[itting] on his hands, confident that his client would be acquitted" rather than "consult[ing with] and be[ing] prepared to call an expert" (Pavel v Hollins, 261 F3d at 224), whose testimony then would have been "available [to] assist[] the jury in its determination" (People v Castricone, 224 AD2d 1019, 1019 [1996]; accord People v Washington, 122 AD3d 1406, 1407 [2014]; compare People v Auleta, 82 AD3d 1417, 1419-1420 [2011], lv denied 17 NY3d 813 [2011]).

Counsel's conduct further fell below our standard of meaningful representation because he failed to object to, and request a limiting instruction to guide the jury in assessing, the testimony of defendant's former spouse regarding defendant's sexual preferences.  Counsel sat mute while the witness testified that, upon reading the victim's statement to police, it struck her that it contained details "only someone who had been intimate with [defendant] would know," including what she then proceeded to describe as defendant's preference for anal intercourse during

---

[3]  In these cases, ineffective assistance of counsel was found utilizing the federal standard (see Strickland v Washington, 466 US 668, 687 [1984]).  However, inasmuch as "our state standard . . . offers greater protection than the federal test" (People v Caban, 5 NY3d 143, 156 [2005]; see People v Clermont, 22 NY3d at 937), representation that falls below the federal standard will generally also be found to fall below our state standard.

their consensual sexual relationship.[4]  We do not think that
counsel's failure to object to this testimony can be excused on
the ground that such an objection had "little or no chance of
success" (People v Caban, 5 NY3d at 152 [internal quotation marks
and citation omitted]).  "Not all relevant evidence is admissible
as of right. . . .  Even where technically relevant evidence is
admissible, it may still be excluded by the trial court in the
exercise of its discretion if its probative value is
substantially outweighed by the danger that it will unfairly
prejudice the other side" (People v Scarola, 71 NY2d 769, 777
[1988] [citations omitted]).

In our view, a legitimate question exists as to whether the
prejudicial effect of the former spouse's testimony regarding
defendant's sexual preferences substantially outweighed its
probative value, especially considering that she testified that
she and defendant had not been sexually active for several years
prior to the alleged assaults on the victim.  Supreme Court
should have had the opportunity to consider this question and
make an appropriate ruling in the exercise of its discretion.
The court would have done so, but for counsel's inexplicable
failure to object.  In the event that the court had determined
this testimony to be admissible, counsel could then have
requested a limiting instruction, as the lack thereof would
"permit[] the jurors to perhaps consider [the former spouse's
statements] as proof of defendant's propensity" to engage in the
sexual acts charged here (People v Langlois, 265 AD2d 683, 685
[1999]; see People v Greene, 306 AD2d 639, 642-643 [2003]; lv
denied 100 NY2d 594 [2003]; People v Forbes, 203 AD2d 609, 610-
611 [1994]).  Indeed, the lack of any limiting instruction
clearly impacted the jury's deliberations, as evidenced by the

_____

[4]  Contrary to defendant's argument, this was not
inadmissible Molineux evidence, inasmuch as anal intercourse
between consenting adults has been held to be neither criminal
conduct nor inimical to public morality (see Lawrence v Texas,
539 US 558, 578-579 [2003]; People v Onofre, 51 NY2d 476, 492
[1980], cert denied 451 US 987 [1981]; see also People v Brewer,
___ AD3d ___, ___, 2015 NY Slip Op 05329, *1, *2 [2015]).

jury's request to have the testimony read back regarding defendant's "past sex life."

Finally, we note with disapproval certain remarks made by the prosecutor during summation, to which counsel did not object. The prosecutor improperly attempted to appeal to the jury's sympathy by asking the jurors to consider how they would have felt if they "were in [the victim's] shoes" (see Wilson v City of New York, 65 AD3d 906, 909 [2009]; Dailey v Keith, 306 AD2d 815, 816 [2003], affd 1 NY3d 586 [2004]). The prosecutor also exhorted the jurors to advocate for the victim during deliberations by using the phrase "you fight for her" (see People v Head, 90 AD3d 1157, 1158 [2011]; People v Nelson, 68 AD3d 1252, 1255 [2009]). While counsel's failure to object to these remarks does not, in and of itself, amount to ineffective assistance of counsel, it further illustrates counsel's representation, the cumulative effect of which deprived defendant of meaningful representation, especially "where, as here, the determination of guilt . . . hinged on sharp issues of credibility" (People v Clarke, 66 AD3d 694, 698 [2009]; see People v Arnold, 85 AD3d at 1334).

In light of our conclusion that a new trial is required, we need not reach defendant's remaining arguments.

Lahtinen, J.P., McCarthy and Clark, JJ., concur.

ORDERED that the judgment and order are reversed, on the law, and matter remitted to the Supreme Court for a new trial.


ENTER:

Robert D. Mayberger
Clerk of the Court