Lynch, J.
 

 Appeal, by permission, from an order of the County Court of Rensselaer County (Ceresia, J.), entered April 19, 2016, which denied defendant’s motion pursuant to CPL 440.10 to vacate the judgment convicting him of the crimes of murder in the first degree and burglary in the first degree, after a hearing.
 

 Following a three-week jury trial held in May 2011, defendant was convicted of murder in the first degree and burglary in the first degree in connection with the January 2002 deaths of Arica Schneider and Sam Holley. The victims were stabbed multiple times while in their apartment in the City of Troy, Rensselaer County. Two other individuals, Terrence Battiste and Bryan Berry, were initially charged with the murders, but their indictments were dismissed without prejudice when defendant’s DNA was matched to blood found at the crime scene. At trial, defendant did not dispute that his DNA—derived from a blood stain found on the victims’ bed sheet—and palm print were discovered at the crime scene. After hearing evidence from, among others, the medical examiner, an expert serologist, crime scene analyst and meteorologist, the jury rejected defendant’s explanation that he discovered the victims’ bodies the morning after they had been murdered, that he was bleeding from a hand injury he suffered while snowboarding the evening before at a gorge located in Troy, and that his blood transferred onto the victims’ bedsheet as he attempted to move the mattress to retrieve a hidden cell phone.
 

 Following the verdict, defendant moved, pursuant to CPL 440.10 (1) (g) and (h), for an order vacating his conviction on the grounds of ineffective assistance of counsel and actual innocence. County Court (Young, J.) denied the motion without a hearing. Upon his direct appeal from the judgment of conviction and, by permission, from the order denying his CPL 440.10 motion, we affirmed the judgment (121 AD3d 1169 [2014], lv denied 24 NY3d 1086 [2014]), but reversed the order that summarily denied the motion, finding that defendant raised sufficient evidence to warrant a hearing and remitted the matter accordingly {id. at 1173-1174). After an eight-day hearing, County Court (Ceresia, J.) denied defendant’s CPL 440.10 motion, and, with this Court’s permission, defendant now appeals.
 

 In People v Hamilton (115 AD3d 12 [2014]), the Second Department determined that a claim of actual innocence must be established with clear and convincing evidence of “factual innocence, not mere legal insufficiency of evidence of guilt and must be based upon reliable evidence which was not presented at the trial” {id. at 23 [citation omitted]; accord People v Maxwell, 152 AD3d 622, 622-623 [2017]; see People v Thibodeau, 151 AD3d 1548, 1556 [2017]; compare People v Beckingham, 116 AD3d 1298, 1299 [2014]). While we recognize that in People v Caldavado (26 NY3d 1034 [2015]) the Court of Appeals opted not to determine whether a freestanding claim of actual innocence is viable (id. at 1037), we concur with the analysis set forth in Hamilton and find that such a claim may be raised pursuant CPL 440.10 (1) (h) (see People v Hamilton, 115 AD3d at 26).
 

 At the hearing, defendant repeated his explanation with regard to the presence of his DNA and palm print at the crime scene. Further, defendant’s wife (then girlfriend), who did not testify at the trial, confirmed that she observed and treated defendant’s injured hand when he returned home from snowboarding the evening before the murders. Defendant also offered testimony by Terry Labor, a forensic scientist, and Stephen Wistar, a forensic meteorologist. Labor testified that the blood stain on the bed sheet was transferred to the sheet through contact with an existing wound, a finding consistent with defendant’s explanation and contrary to the People’s blood drop theory that defendant was cut during the murders. Labor also opined that the palm print would not have been a discernibly different color if it had been made when the victims were murdered or when defendant ostensibly entered the apartment the following morning—a point contrary to the People’s argument that the color of the palm print showed that it was made at the time of the murders. Wistar testified that based on his review of the weather data and the topography and location of the area where defendant claimed to be snowboarding, there was some snow present at the gorge during the time that defendant claimed he was injured. Defendant also presented testimony by a witness who claimed that he had been incarcerated with Battiste in 2005 and that Battiste spoke to him about details of the victims’ murders and admitted that he was the driver the night they were murdered.
 

 In our view, the evidence submitted at the hearing failed to establish by clear and convincing evidence that defendant did not murder the victims. Much of the evidence presented at the hearing was also presented to the jury, which considered and rejected defendant’s explanation, and the jury’s verdict was upheld on appeal (see People v Beckingham, 116 AD3d at 1299). At best, the additional evidence submitted in support of the motion to vacate arguably raised “[m]ere doubt as to the defendant’s guilt, or a preponderance of conflicting evidence as to the defendant’s guilt,” neither of which is sufficient to support a motion to vacate a judgment based on actual innocence (People v Hamilton, 115 AD3d at 27; see People v Maxwell, 152 AD3d at 623). Accordingly, we find that County Court properly declined to vacate defendant’s conviction pursuant to CPL 440.10 (1) (h) based on actual innocence.
 

 Defendant also argues that County Court should have vacated the judgment of conviction based on ineffective assistance of counsel. Specifically, defendant claims that trial counsel failed to obtain and present expert forensic testimony, such as Labor’s, that would have countered the People’s theory that defendant was injured during the course of murdering the victims and supported defendant’s explanation with regard to how his DNA and palm print were found at the scene. Defendant also faults counsel for failing to produce a weather expert, such as Wistar, to counter the opinion of the People’s expert that there was not enough snow to snowboard in the gorge the evening prior to the murders. Defendant further contends that trial counsel should have allowed his wife to testify and should have objected when the People used defendant’s prearrest statements to the police, questioned him about his tattoo and compared an old photograph of defendant to a photograph of another person purportedly seen outside of the victims’ apartment the evening of the murders. Finally, defendant claims that trial counsel failed to put forth a viable defense based on the culpability of Battiste and Berry.
 

 A criminal defendant’s right to the effective assistance of counsel is guaranteed by both the Federal and State Constitutions (see US Const. 6th Amend; NY Const. art I, § 6). To determine whether a defendant received effective assistance, we consider whether “the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation” (People v Baldi, 54 NY2d 137, 147 [1981]; accord People v Speaks, 28 NY3d 990, 992 [2016]; People v Cassala, 130 AD3d 1252, 1253 [2015], lv denied 27 NY3d 994 [2016]). The test is “reasonable competence, not perfect representation” (People v Oathout, 21 NY3d 127, 128 [2013] [internal quotation marks and citation omitted]; see People v Malloy, 152 AD3d 968, 971 [2017]). Accordingly, we “must avoid confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis” (People v Cassala, 130 AD3d at 1253-1254 [internal quotation marks and citation omitted]).
 

 During his testimony at the hearing, defendant’s trial counsel highlighted, in general, his extensive criminal defense experience, and, in particular, his experience with the use of DNA evidence and ability to interpret weather data. He testified that he, his partner and associates devoted more than 600 hours to representing defendant and, although he confirmed that he believed that the “most logical” theory of the defense was third-party culpability, he denied telling defendant that this was a strong defense. He explained that he did not subpoena the witnesses who provided testimony before the grand jury that indicted Battiste and Berry to testify at the trial because they were “inherently unreliable,” for example, a known “jailhouse snitch” and a purported drug addict who had changed her story multiple times. Trial counsel did not call defendant’s wife to testify because he believed that her testimony could have been overshadowed by evidence of a domestic violence incident perpetrated by defendant. As for the expert testimony, trial counsel claimed that there was inadequate time to find an expert after the People submitted a meteorologist’s testimony on rebuttal and explained that he determined not to call a blood splatter expert because it was not possible to determine when defendant’s DNA was left at the scene, that is, during the murders or the next morning when defendant admittedly went to the victims’ apartment.
 

 While trial counsel’s personal assessment of the defense is informative, it is certainly not dispositive because our obligation is to determine whether, “[v]iewed objectively, the transcript and the submissions reveal the existence of a trial strategy that might well have been pursued by a reasonably competent attorney” (People v Satterfield, 66 NY2d 796, 799 [1985]). Generally, a trial counsel’s determination to not call a particular witness, including an expert witness, will not necessarily constitute ineffective assistance of counsel (see People v King, 124 AD3d 1064, 1067 [2015], lv denied 25 NY3d 1073 [2015]; People v Muller, 57 AD3d 1113, 1114 [2008], lv denied 12 NY3d 761 [2009]). Upon our review of the record, we find that trial counsel’s determinations were based on a trial strategy that was reasonably developed to confront and reconcile the evidence in the case. Indisputably, defendant’s blood DNA and palm print were discovered at the scene and there was no physical evidence indicating that either Battiste or Berry were in the apartment. Opting not to present potentially incredible witness testimony that would reflect poorly on defendant, trial counsel elicited testimony from the investigating officers that certain witnesses testified under oath that Battiste and Berry admitted that they were involved in the murders and that Bat-tiste was seen outside of the victims’ apartment the night of the murders. Trial counsel also elicited testimony with regard to the victims’ lifestyle and exposure to disputes with, among others, gang members locally, in New York City and in Pennsylvania. In contrast, trial counsel highlighted that defendant and Holley were friends and defendant had no motive to murder the victims.
 

 Similarly, we find that, under the circumstances, trial counsel’s failure to retain certain experts did not constitute ineffective assistance of counsel. Trial counsel’s cross-examinations of the People’s experts were organized and effective and confirmed his knowledge of weather data and crime scene analysis. For example, trial counsel led the People’s meteorologist to concede that it was not raining, and there was likely some ambient light when defendant claimed that he was snowboarding. Further, after acknowledging that he had never actually
 

 been to the gorge, the meteorologist conceded that snow could be present on sheltered surfaces and that, based on the topography and the nature of drifting and blowing snow, he could not definitively state how much snow was on the ground in the gorge the evening before the victims were murdered. While defendant takes issue with defense counsel’s failure to call a bloodstain expert to address whether the blood on the bed sheet was a transfer pattern, i.e., consistent with defendant’s explanation, or a drop pattern, i.e., which would not be, the People’s crime scene expert, Laura Pettier, had already testified that it was a transfer stain. Moreover, during his cross-examination, trial counsel elicited Pettler’s opinion that the procedures that the police used when they processed the crime scene were not ideal, compromising her ability to develop her theory that the victims were murdered during the course of an argument and not during a planned robbery or gang-related murder. Consequently, she conceded that this theory was speculative. As for determining when the palm print was made based on the color of the blood, the medical examiner, Michael Sikirica, testified that “blood oxidizes and changes to a darker color—a process that can occur within a few minutes . . . but it may take hours to finally develop.” Given variables such as temperature and humidity, Sikirica was unable to address how long it would take blood to dry. Notably, he did not opine as to the timing of the palm print and his explanation leaves that question unresolved.
 

 Turning to defendant’s remaining arguments, generally, the failure to make a motion that has questionable merit will not support a claim of ineffective assistance (see People v Brandon, 133 AD3d 901, 903 [2015], lv denied 27 NY3d 992 [2016]). It is not disputed that defendant voluntarily spoke with the police and never invoked his right to counsel, and we have determined that it was not error for County Court to allow testimony with regard to defendant’s statements to the police “that revealed inconsistencies and omissions regarding important details” (121 AD3d at 1173; see People v Chery, 28 NY3d 139, 145 [2016]). Further, under the circumstances, we do not find that trial counsel’s failure to object to the prosecutor’s single question about defendant’s tattoo constituted ineffective assistance (see People v Henry, 129 AD3d 1334, 1337 [2015], lv denied 26 NY3d 930 [2015]). Similarly, our review of the trial transcript indicates that trial counsel was reasonably concerned about the jury’s perception of his frequent objections—which he claimed County Court overruled “95%” of the time. Further, the jury was aware that the photograph of defendant displayed during the People’s summation did not reflect defendant’s appearance in 2002, and County Court instructed the jury that commentary during opening and closing statements was not evidence. To the extent that trial counsel’s testimony conflicted with defendant’s, we defer to County Court’s credibility assessments (see People v Beckingham, 134 AD3d 1255, 1256 [2015], lv denied 27 NY3d 992 [2016]; People v VanDeusen, 129 AD3d 1325, 1327 [2015], lv denied 26 NY3d 972 [2015]). In sum, when we consider the “entirety of the representation defendant received at trial” (People v Speaks, 28 NY3d at 992), we find that County Court properly exercised its discretion in finding that defendant received the effective assistance of counsel (see People v VanDeusen, 129 AD3d at 1327; People v Avery, 80 AD3d 982, 987-988 [2011], lv denied 17 NY3d 791 [2011]).
 

 Egan Jr., J.P., Rose and Mulvey, JJ., concur.
 

 Ordered that the order is affirmed.