People v Sposito (2021 NY Slip Op 02441)





People v Sposito


2021 NY Slip Op 02441


Decided on April 22, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:April 22, 2021

111155
[*1]The People of the State of New York, Respondent,
v
Joseph Sposito, Appellant.

Calendar Date:January 5, 2021

Before:Garry, P.J., Clark, Aarons, Pritzker and Colangelo, JJ.

Barket Epstein Kearon Aldea & LoTurco, LLP, Garden City (Donna Aldea of counsel), for appellant.
P. David Soares, District Attorney, Albany (Michael C. Wetmore of counsel), for respondent.



Pritzker, J.
Appeal, by permission, from an order of the Supreme Court (McDonough, J.), entered April 16, 2019 in Albany County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment convicting him of the crimes of rape in the first degree and criminal sexual act in the first degree, after a hearing.
Defendant faced charges following his sexual encounter with a victim who was allegedly physically helpless and incapable of consent due to her intoxication. Following a 2012 jury trial, he was convicted of rape in the first degree and criminal sexual act in the first degree. His subsequent motion for forensic DNA testing pursuant to CPL 440.30 (1-a) was denied, as was his motion to vacate the judgment of conviction upon the ground that he was denied the effective assistance of counsel (see CPL 440.10 [h]). Upon appeal, this Court affirmed the judgment of conviction and the denial of defendant's CPL 440.30 motion, but found that a hearing was required to assess the claims in his CPL 440.10 motion (140 AD3d 1308, 1312-1313 [2016], affd 30 NY3d 1110 [2018]). Supreme Court conducted that hearing upon remittal, then denied the motion. Defendant appeals by permission.
A criminal defendant is guaranteed the effective assistance of counsel by both the US and NY Constitutions and, pursuant to the more stringent standard under the NY Constitution, receives it when "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]; see US Const 6th Amend; NY Const, art I, § 6; People v Clark, 28 NY3d 556, 562-563 [2016]; People v Dickinson, 182 AD3d 783, 789 [2020], lv denied 35 NY3d 1065 [2020]). It is a defendant's burden to show that meaningful representation was not provided and, further, that there were no "strategic or other legitimate explanations — i.e., those that would be consistent with the decisions of a reasonably competent attorney — for the alleged deficiencies of counsel" (People v Maffei, 35 NY3d 264, 269 [2020] [internal quotation marks and citation omitted]; see People v Caban, 5 NY3d 143, 152 [2005]; People v Green, 190 AD3d 1094, 1100 [2021]; People v Bowen, 185 AD3d 1219, 1220-1221 [2020]). Following our review of the record here, and deferring to Supreme Court's implicit determination that trial counsel's testimony at the CPL article 440 hearing was credible (see People v Nelson, 171 AD3d 1251, 1253 [2019], lv denied 36 NY3d 1058 [2021]), we conclude that defendant failed to make that showing. We therefore affirm.
Defendant claims that trial counsel was ineffective in waiving a suppression hearing and in failing to consult with or call experts to rebut the People's expert proof, and some discussion of the facts is needed to place those arguments into context. The crimes for which defendant was convicted arose out of a sexual encounter with the victim at [*2]a mutual acquaintance's home, where they had gone after an evening of heavy drinking, and it was alleged that the victim was so intoxicated as to be "incapable of consent by reason of being physically helpless" (Penal Law §§ 130.35 [2]; 130.50 [2]). The victim was transported to the hospital after the encounter, where she was found to have a high blood alcohol concentration and physical indicia of rough, potentially nonconsensual, vaginal and anal sex. Not long after that, investigators interviewed defendant and others who had been at the residence. Defendant, who was not Mirandized before he engaged in that recorded interview, consistently maintained that the victim was conscious and willing throughout the sexual encounter. After he was Mirandized hours into the interview and investigators challenged aspects of his account, defendant altered his account by, among other things, retracting his initial claim that the victim had invited him into the room where she was resting and clarifying that he asked to join her in bed several times without response before she "murmur[ed]" her assent. Defendant then invoked his right to counsel and terminated the interview.[FN1]
With that background in mind, we turn to trial counsel's decision to waive a Huntley hearing and allow defendant's recorded statements into evidence at trial. A defense attorney is not obliged to seek suppression of a defendant's statements, and it is a "rare case where a defendant shows the absence of a strategic or legitimate explanation in counsel's strategy not to" do so (People v Zeh, 144 AD3d 1395, 1396 [2016], lv denied 29 NY3d 954 [2017]; see People v Rivera, 71 NY2d 705, 709 [1988]). It is initially apparent that counsel did not overlook the issue, as he was aware that there was an arguable basis to suppress the recorded statements and sought that relief as part of his pretrial omnibus motion. Counsel explained that this was not because he believed that suppression was likely, but rather because he knew that the motion would force the People to go beyond their usual "stingy" discovery practices and turn over grand jury testimony and other items prior to the suppression hearing.[FN2] Indeed, counsel testified that he did not want the statements suppressed because he believed that they would benefit the defense at trial, which is why he waived the Huntley hearing on the morning it was to occur after receiving the sought-after discovery and discussing the matter with defendant.
In support of his belief that the admission of the statements would be beneficial, counsel explained that defendant had maintained throughout the interview that the victim was an active and willing participant in the sexual encounter and that, if the statements were suppressed, the jury would only hear about the changes that defendant had made to his story when, as expected, he testified at trial and was cross-examined about them (see e.g. People v Martin, 8 AD3d 883, 886 [2004], lv denied 3 NY3d 677 [2004[*3]]). In contrast, if the entire interview were put into evidence with appropriate redactions, the defense would benefit from having the jury repeatedly hear defendant's exculpatory version of events and be assured that almost all of his account had remained consistent over time. Counsel further believed that any damage caused by the jury seeing defendant walk back aspects of his story could be ameliorated, reasoning that jurors could be persuaded to sympathize with a "desperate" and "confused" defendant who wavered on a few points after prolonged, increasingly hostile questioning, but remained "adamant that everything that had just happened was consensual and [that the victim] was awake for it." The trial record reflects that counsel ably pursued that strategy and, in our view, defendant gave no compelling reason to doubt that "counsel's decision to waive a Huntley hearing was legitimately based upon . . . the consistency of defendant's statement to the police, and coincided with the defense pursued at trial" (People v Umana, 143 AD3d 1174, 1175 [2016], lv denied 29 NY3d 1037 [2017]; see People v De Mauro, 48 NY2d 892, 893-894 [1979]; People v Rodabaugh, 26 AD3d 598, 599-600 [2006]; compare People v Carnevale, 101 AD3d 1375, 1381 [2012]).
Next, although defendant complains that counsel failed to consult with experts or present their testimony to rebut proof related to the victim's sexual assault examination, her degree of intoxication and the presence of defendant's genetic material in her anus, the hearing evidence reflected that counsel "had a strategic reason for [that] failure" (People v Gross, 26 NY3d 689, 694 [2016]; see People v Little, AD3d , , 2021 NY Slip Op 01235, *1 [2021]; People v Olson, 162 AD3d 1249, 1251 [2018], lv denied 32 NY3d 1067 [2018]; People v Auleta, 82 AD3d 1417, 1419-1420 [2011], lv denied 17 NY3d 813 [2011]). To reiterate, defendant and the victim indisputably had a sexual encounter, and the charges against defendant alleged that he had anal and vaginal sex with a victim who was physically helpless and, as a result, was unable to consent (see Penal Law §§ 130.00 [7]; 130.35 [2]; 130.50 [2]). A finding that the victim was alert and willing would have therefore resulted in defendant's acquittal on all charges, and counsel made the tactical decision to focus on that issue to the exclusion of murkier battles over whether the alleged anal sexual conduct had occurred or whether some of the conclusions drawn by the People's experts were open to question. Counsel explained that he chose that course because of emotionally charged testimony from the victim, the sexual assault nurse examiner and others, all of whom he realized posed a real danger of inflaming the sympathies of the jury against defendant. As such, counsel viewed it as essential to present a narrowly tailored defense that kept the jury "singl[ed] in on" concrete facts pointing to the victim as an active participant in the sexual encounter. In view [*4]of the evidence and the nature of the charges against defendant, counsel's decision "reflect[ed] an objectively reasonable and legitimate trial strategy under the circumstances" (People v Berroa, 99 NY2d 134, 138 [2002]; see People v Gross, 26 NY3d at 694; People v Johnson, 273 AD2d 495, 496-497 [2000], lv denied 95 NY2d 854 [2000]).
Counsel's hearing testimony and the trial record reflect that he pursued that strategy by cross-examining the People's experts and carefully eliciting that neither the damaging findings of the victim's sexual assault examination nor her estimated blood alcohol concentration ruled out her being conscious and engaging in consensual sex. One of those experts, the sexual assault nurse examiner, also confirmed that the victim was fully awake and aware when they spoke a few hours after the sexual encounter. Counsel further elicited from eyewitnesses that the victim — who did not remember arriving at the acquaintance's residence, going to bed or the sexual encounter itself — was moving and speaking soon before and after the encounter and was heard making noises during it that were suggestive of consensual sex. In addition, counsel described in his hearing testimony how he sought out other evidence to support his strategy, such as subpoenaing an emergency medical technician who he declined to put on the stand after learning that, notwithstanding written indications to the contrary, the victim was "effectively unconscious" when she was transported in an ambulance after the sexual encounter. The foregoing depicts the competent execution of a reasonable strategy by counsel, and the contention that expert proof could have furthered it in some way amounts to a "disagreement with defense counsel's tactics and strategies . . . [that does not] rise to the level of true ineffectiveness" (People v Morehouse, 5 AD3d 925, 927 [2004], lv denied 3 NY3d 644 [2004]; see People v Mosley, 155 AD3d 1124, 1128-1129 [2017], lv denied 31 NY3d 985 [2018]; People v Morgan, 149 AD3d 1148, 1154 [2017]; People v Green, 108 AD3d 782, 786 [2013], lv denied 21 NY3d 1074 [2013]).
In short, there were strategic explanations for the complained-of actions of counsel and, as defendant failed to demonstrate that a reasonably competent attorney would not have taken them (see CPL 440.30 [6]), they should not be second-guessed (see People v Benevento, 91 NY2d 708, 712 [1998]; People v White-Span, 182 AD3d 909, 916 [2020], lv denied 35 NY3d 1071 [2020]; People v Olson, 162 AD3d at 1251). Our review of the record as a whole gives no other reason for concern — to the contrary, it confirms a capable performance from counsel at every stage — and we are accordingly satisfied that defendant received meaningful representation (see People v VanDeusen, 129 AD3d 1325, 1327 [2015], lv denied 26 NY3d 972 [2015]; People v Manchester, 123 AD3d 1285, 1289 [2014], lv denied 26 NY3d 931 [2015]). Thus, Supreme Court properly denied defendant's motion to vacate the judgment [*5]of conviction.
Garry, P.J., Clark and Aarons, JJ., concur.
Colangelo, J. (dissenting).
I respectfully dissent. Because, in my view, it was objectively unreasonable for defendant's trial counsel to waive a Huntley hearing and to fail to consult with and/or call experts during the trial, defendant was deprived of the effective assistance of counsel. I would therefore reverse and order a new trial.
"To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate that he or she was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Bowen, 185 AD3d 1219, 1220-1221 [2020] [internal quotation marks and citations omitted]; see People v Caban, 5 NY3d 143, 152 [2005]; People v Cassala, 130 AD3d 1252, 1253 [2015], lv denied 27 NY3d 994 [2016]). I find that defendant has established such claim here.
First, defense counsel was ineffective for failing to seek suppression of his unconstitutionally obtained confession and recorded telephone conversation by waiving a Huntley hearing that the trial court had granted. "While the failure of counsel to make a pretrial suppression motion generally does not necessarily equate to a deprivation of meaningful representation, counsel may still be deemed ineffective in the rare case where a defendant shows the absence of a strategic or legitimate explanation in counsel's strategy not to pursue a suppression motion," and, in this regard, "counsel's subjective reasons for this strategy are immaterial" (People v Zeh, 144 AD3d 1395, 1396-1397 [2016], lv denied 29 NY3d 954 [2017] [internal quotation marks, ellipsis, brackets and citations omitted]). It is well settled that Miranda warnings are required prior to custodial interrogation and that a statement obtained in violation of this principle must be suppressed (see Miranda v Arizona, 384 US 436, 471-472 [1966]; People v Berg, 92 NY2d 701, 704 [1999]; People v Henry, 114 AD3d 1025, 1026 [2014], lv dismissed 22 NY3d 1199 [2014]). A suspect is in custody when, under the circumstances, "a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (People v Paulman, 5 NY3d 122, 129 [2005]; see People v Pittman, 178 AD3d 1136, 1137 [2019], lv denied 34 NY3d 1162 [2020]). Defendant's videotaped statement revealed that, among other things, defendant was questioned extensively at the police station before Miranda warnings were given, and investigators engaged in a discussion with defendant about the warnings before they were read. Defendant then gave inculpatory statements that contradicted his earlier statements and what would ultimately be his trial testimony, admitting that the victim was unresponsive when he got into bed with her and that she was unable to be roused by his attempts to communicate with her. Defendant thereafter invoked his right to counsel. After doing so[*6], defendant was permitted to make telephone calls that were recorded by investigators without his knowledge. During one of the calls, defendant made statements regarding the incident that were relied upon by the People at trial.
At the CPL article 440 hearing, defendant's trial counsel explained that he waived the Huntley hearing and consented to the admission of the video recording of defendant's interrogation during the People's direct case because he believed that the video was "more good than bad." Counsel also explained that, since he intended to have defendant testify, it would be better for the People to introduce and play the video to avoid impeachment of defendant with the video or allegations of recent fabrication when he testified. However, the efficacy of counsel's strategy is, at best, questionable in view of defendant's statements toward the end of the interrogation, which contradicted his prior rendition of events and tended to undermine his defense of conscious consent. Counsel conceded, among other things, that defendant's post-Miranda statements, if in response to an uninterrupted chain of questioning punctuated by a defective Miranda warning and waiver, might have been subject to suppression.
The foregoing establishes that defendant had a colorable basis to argue that his pre-Miranda statements were the product of custodial interrogation in violation of his right to counsel and that his subsequent statements were the product of an uninterrupted chain of questioning punctuated by a defective Miranda warning and waiver (see People v White, 10 NY3d 286, 291-292 [2018], cert denied 555 US 897 [2008]; People v Chapple, 38 NY2d 112, 115 [1975]). There was also a colorable basis to argue that the investigator's statements embellished the Miranda warnings, rendering the warnings inadequate and ineffective (see People v Dunbar, 24 NY3d 304, 316 [2014], cert denied 575 US 1005 [2015]). While I do not pass on whether counsel would have ultimately succeeded in suppressing defendant's videotaped confession and recorded phone call, I find that "a colorable basis existed for seeking suppression. Given the potential benefit in doing so, [there was] no strategic or legitimate reason to let . . . this crucial evidence come in unabated at trial," and defendant was therefore deprived of his constitutional right to meaningful representation in this regard (People v Zeh, 144 AD3d at 1398; see People v Carter, 142 AD3d 1342, 1343 [2016]).
Defendant was also denied meaningful representation as a result of counsel's failure to consult with experts or call expert witnesses on his behalf to rebut key portions of the People's proof purporting to establish that the victim was incapable of consent by reason of being physically helpless (see Penal Law §§ 130.35 [2]; 130.50 [2]) and that anal sexual contact had occurred (see Penal Law § 130.00 [2] [b]). In this regard, "it is elementary that the right to effective representation includes the right [*7]to assistance by an attorney who has taken the time to review and prepare both the law and the facts relative to the defense" (People v Droz, 39 NY2d 457, 462 [1976]; accord People v Oliveras, 21 NY3d 339, 346-347 [2013]). In general, failing to consult with or call a witness does not transform otherwise meaningful representation into ineffective assistance of counsel (see People v Olson, 162 AD3d 1249, 1251 [2018], lv denied 32 NY3d 1067 [2018]; People v Mosley, 155 AD3d 1124, 1128 [2017], lv denied 31 NY3d 985 [2018]). However, a defendant can establish that he or she was denied meaningful representation by his or her counsel's failure to consult with or call as a witness an expert to offer rebuttal testimony by demonstrating that "such testimony was available, that it would have assisted the jury in its determination or that he [or she] was prejudiced by its absence" (People v Washington, 122 AD3d 1406, 1407 [2014] [internal quotation marks and citation omitted], lv denied 25 NY3d 1173 [2015]; see People v Lanier, 191 AD3d 1094, 1095-1096 [2021]).
At trial, defendant denied having anal sex with the victim, but he admitted having sexual intercourse with the victim and maintained that she was conscious and had consented. The victim claimed that she did not remember and therefore could not testify about the circumstances of having sexual intercourse with defendant. The People, in order to prove physical helplessness, an element of both rape in the first degree and criminal sexual act in the first degree (see Penal Law §§ 130.35 [2]; 130.50 [2]), presented, in addition to defendant's videotaped interrogation, expert testimony by, among others, a toxicologist and the sexual assault nurse examiner (hereinafter SANE) who administered the victim's sexual assault examination. The People entered the examination report into evidence without objection by the defense. According to the SANE, who cried during her testimony, the victim's injuries "were more severe than [she] has ever seen." The SANE testified that the vast amount of blood was the result of the victim's bleeding from her injuries and the trauma to the area was unlikely the result of consensual sex. Trial counsel admitted at the CPL article 440 hearing that the SANE's testimony about the nature and extent of the victim's injuries was "particularly damaging" to the defense. Nevertheless, counsel did not consult with any experts prior to the direct testimony of the People's experts and did not call any expert witnesses on defendant's behalf to undermine their findings and conclusions. Counsel testified that he did not consult a toxicologist to demonstrate that the victim's blood alcohol content (hereinafter BAC) was lower at the time of the encounter because he did not think it was a viable theory based in part on his own expertise and the number of cases in which this issue was at the forefront. Nor did counsel consult a DNA expert to strategize a plausible alternate explanation for [*8]the victim's anal injuries and the presence of defendant's DNA in her anus. He instead pursued an explanation that the victim "may have had consensual or at least relations with someone else prior to [defendant], but that never went anywhere."
Robert Belloto, a forensic toxicologist, testified to, among other things, a 25% margin of error in a BAC reading, which could have lowered the victim's BAC at the hospital from .236 to .177 or even lower. If the jury accepted such testimony, it could have found that the victim was not in a stupor or unconscious at the time of the incident. Susan Dantoni, a board-certified gynecologist with extensive experience in sexual assault examinations, and Laura Schile, a forensic scientist with a specialty in DNA, serology and evidence collection and handling, both testified at the hearing that, contrary to the SANE's trial testimony, the victim was not bleeding at all, the victim's injuries were not severe, and the diagnosis of "sexual assault" in the medical records, which defense counsel consented to admit at trial, was scientifically impossible to make based upon the evidence. Schile testified as to a plausible explanation for the presence of defendant's DNA in the victim's anus — to wit, the improper use of a speculum rather than an anoscope, which could have transferred material from the exterior to the interior of the anus. As the record demonstrates, trial counsel did not explore the source of the blood and, instead, cross-examined the SANE about a friable cervix theory for which there was no basis in the record. Schile explained that she would have called the jury's attention to the improper collection and unreliability of the scientific evidence introduced by the People based upon the lack of documentation, the use of an improper tool and the discarding of swabs of blood taken from the victim's vagina. She would have advised counsel not to stipulate that the sexual offense collection kit had been properly taken and properly secured from the victim.
The record evidence reveals that the People's summation relied heavily on the nature and extent of the victim's alleged injuries, the victim's level of intoxication and defendant's confession to prove that the victim was physically helpless at the time that the alleged acts occurred. An example of the prejudice to defendant by counsel's failure to rebut the SANE's testimony is the graphic reference to her description of the victim's injuries as being inconsistent with defendant's claim that the victim consented. In my view, "[c]ounsel's admitted failure to investigate the victim's [medical issues] meant that he was unprepared to effectively cross-examine the SANE, with disastrous consequences for defendant's case" (People v Cassala, 130 AD3d at 1254; see People v Lanier, 191 AD3d at 1095-1096). The totality of the record reveals that, at crucial stages of the representation, trial counsel failed to consult with and was unprepared to call medical experts [*9]to challenge the People's scientific proof, in spite of defendant's insistence that the sexual intercourse was consensual and that no anal sexual contact occurred. The cumulative effect of these prejudicial failures, including counsel's failure to seek suppression of defendant's statements, deprived defendant of meaningful representation and his right to a fair trial (see People v Oathout, 21 NY3d 127, 132 [2013]; People v Taylor, 156 AD3d 86, 96-97 [2017], lv denied 30 NY3d 1120 [2018]; People v Cassala, 130 AD3d at 1253). Accordingly, I would reverse.
ORDERED that the order is affirmed.



Footnotes

Footnote 1: The recording continued after investigators left the room, and it depicts defendant making a phone call to a friend in which he made clear that he had not raped the victim but admitted, in crude terms, that they had vigorous consensual sex. There is some dispute as to whether the video of the call was shown to the jury, but the record shows that defendant was cross-examined regarding his crude language and the People referenced it in their summation. In any event, counsel objected to the admission of the recorded phone call and thereafter objected to the use of its contents on legitimate grounds, and defendant's efforts to argue that counsel should have objected on different, legally untested grounds conflates "true ineffectiveness with mere losing tactics and accord[s] undue significance to retrospective analysis" (People v Baldi, 54 NY2d at 146; accord People v Benevento, 91 NY2d 708, 712 [1998]).

Footnote 2: Counsel's discovery concerns were undoubtedly valid, as the Legislature had not yet enacted CPL article 245 to ensure thorough and prompt disclosure in criminal matters (see CPL art 245, as added by L 2019, ch 59, part LLL, § 2).