People v Harris (2026 NY Slip Op 01095)

People v Harris

2026 NY Slip Op 01095

Decided on February 26, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 26, 2026

113365 CR-24-1747
[*1]The People of the State of New York, Respondent,
vLarry J. Harris, Appellant.

Calendar Date:January 6, 2026

Before:Garry, P.J., Reynolds Fitzgerald, McShan, Powers and Mackey, JJ.

Matthew C. Hug, Albany, for appellant, and appellant pro se.
F. Paul Battisti, District Attorney, Binghamton (Mary E. Saitta of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeals (1) from a judgment of the County Court of Broome County (Joseph Cawley, J.), rendered January 21, 2022, convicting defendant following a nonjury trial of the crimes of predatory sexual assault against a child (two counts) and rape in the third degree, and (2) by permission, from an order of said court, entered September 13, 2024, which denied defendant's motion pursuant to CPL 440.20 to set aside the sentence, without a hearing.
Defendant was charged by a four-count indictment with crimes stemming from allegations that, on multiple occasions between 2013 and 2018, he engaged in predatory sexual assault against a child (two counts) and committed rape in the third degree (two counts).[FN1] The People declared their readiness for trial and filed a certificate of compliance on August 4, 2020 and later supplemented their certificate and declaration of readiness on May 14, 2021. A nonjury trial ensued, after which defendant was found guilty as charged. Following a persistent violent felony offender hearing, defendant was found to be a persistent violent felony offender as to counts 1 and 2 and a second violent felony offender as to count 3. Defendant was subsequently sentenced to consecutive prison terms of 25 years to life on counts 1 and 2 and a concurrent prison term of four years, to be followed by two years of postrelease supervision, on count 3.
Defendant then moved pursuant to CPL 440.20 to set aside the sentence on the basis that County Court erred in finding him to be a persistent violent felony offender on counts 1 and 2. County Court denied defendant's motion without a hearing. Defendant appeals from the judgment of conviction and, by permission, the denial of his CPL 440.20 motion.
Defendant contends that the verdict related to the convictions for predatory sexual assault against a child is not supported by legally sufficient evidence and is against the weight of the evidence. He bases this contention on what he argues are the inconsistent accounts of the time frame underlying the charged criminal conduct and that there is no corroboration as to the victim's account of defendant's criminal conduct. "When assessing the legal sufficiency of a [factfinder] verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational [factfinder] could have found the elements of the crime proved beyond a reasonable doubt. In contrast, when undertaking a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Sharlow, 217 AD3d 1120, 1121 [3d Dept 2023] [internal quotation marks, brackets and citations [*2]omitted], lv denied 40 NY3d 1013 [2023]). As charged in count 1, "[a] person is guilty of predatory sexual assault against a child when, being [18] years old or more, he or she commits the crime of rape in the first degree . . . and the victim is less than [13] years old" (Penal Law § 130.96). A person is guilty of rape in the first degree "when he or she engages in sexual intercourse with another person . . . who is less than [13] years old and the actor is [18] years old or more" (Penal Law § 130.35 [former (4)]). As charged in count 2 for the underlying conduct establishing predatory sexual assault against a child, "a person is guilty of course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration . . . he or she, being [18] years old or more, engages in two or more acts of sexual conduct, which include at least one act of sexual intercourse . . . with a child less than [13] years old" (Penal Law § 130.75 [former (1) (b)]). "A person is guilty of rape in the third degree when . . . being [21] years old or more, he or she engages in sexual intercourse with another person less than [17] years old" (Penal Law 130.25 [former (2)]).
The victim testified that she was born in 2002 and met defendant, who was her mother's boyfriend, in 2013. She stated that beginning in the fall 2013, defendant began to spend more time at their apartment, that she was alone with defendant often and the two became close. The victim testified that defendant had sexual intercourse with her for the first time when she was 11 years old, on Halloween night, while she was sleeping in her bedroom at their apartment on Doubleday Street in the City of Binghamton, Broome County (count 1). The victim further testified that between the summer of 2014 until January 2015, defendant had sexual intercourse with her on a regular basis, usually a few times a week, in her bedroom. She stated that it became routine for defendant to come into her bedroom while she was sleeping, touch her, take her clothes off and engage in sexual intercourse. The victim stated that defendant had sexual intercourse with her more than 10 times during this time period (count 2). The victim also testified that on several occasions defendant would bring her to an apartment in the Village of Johnson City, Broome County to have sexual intercourse. Specifically, she recalled that on November 4, 2018, defendant brought her to this apartment, had sexual intercourse with her and then took her to the mall to buy her clothes (count 3). She explained that defendant would buy her expensive items such as cellular telephones and clothing, tell her that he loved her, that they would have a future together, and that this — the relationship between the victim and defendant — was his dream.
The victim's mother testified that defendant's date of birth is in January 1975. She explained that she had a romantic relationship with defendant and that he spent time alone [*3]with the victim because she worked long hours. She confirmed that defendant bought expensive gifts for the victim and that she did not learn of defendant's sexual assault of the victim until June 2019. Thereafter, she confronted defendant regarding his sexual assaults and rapes of the victim and that in response to her allegations, he stated, "[you] will never understand that relationship." The victim's aunt testified that on June 9, 2019, the victim broke down, was very upset and crying hysterically as she disclosed to her that defendant sexually assaulted and raped her.
Defendant testified that he met the victim's mother in 2013, began to spend more time with them beginning in January 2014, but did not stay over in their apartment until May 2014. He further testified that he, however, did not have a relationship with the victim during this time. Defendant denied having any sexual intercourse with the victim, except on one occasion in 2019, when the victim was mad, upset and crying and, "one thing led to another and we had sex." In response to this testimony on direct, the People, on cross-examination and for impeachment purposes only, confronted defendant with text messages he had authored to the victim in 2014 that repeatedly referenced sexual acts and conduct then taking place between defendant and the victim.
We are satisfied that defendant's convictions are supported by legally sufficient evidence relative to the time frame of his criminal conduct. The victim provided specific details and accounts of the sexual conduct that defendant engaged in and sufficiently identified the time frame of the sexual intercourse by recalling a holiday and by connecting the sexual acts to specific apartments and activities taking place at the time the sexual assaults and rapes occurred. Viewing the evidence in a light most favorable to the People, we find that the factfinder could properly credit the victim's testimony and further find that such evidence was legally sufficient to support a conviction on all counts, specifically that such criminal conduct occurred, respectively, when the victim was 11 years old, over a period of time not less than three months in duration when she was less than 13 years old and when she was 16 years old (see People v Cuadrado, 227 AD3d 1174, 1176-1177 [3d Dept 2024], lv denied 42 NY3d 969 [2024]; People v Sharlow, 217 AD3d at 1122). As to the weight of the evidence, a different verdict in this case would not have been unreasonable had the factfinder credited defendant's testimony or discredited the victim's account of sexual assaults and rapes. However, contrary to defendant's contention, the verdict is not against the weight of the evidence as there was corroborating evidence from the testimony of the other witnesses, pictures, a video and a text message conversation between the victim and defendant.[FN2] Furthermore, any inconsistencies in the victim's testimony were thoroughly explored on cross-examination and "do not render [*4]the victim's testimony inherently unbelievable or incredible as a matter of law" (People v Mayette, 233 AD3d 1097, 1101 [3d Dept 2024] [internal quotation marks, brackets and citation omitted], lv denied 43 NY3d 945 [2025]; see People v Starnes, 206 AD3d 1133, 1140 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]).[FN3]
Defendant next argues that the People did not exercise due diligence or make reasonable efforts in ascertaining the existence of the victim's medical records, defendant's video calls and jail letters, thus County Court should have found the certificate of compliance (hereinafter COC) illusory and dismissed the indictment. "[T]he key question in determining if a proper COC has been filed is whether the prosecution has exercised due diligence and made reasonable inquiries to ascertain the existence of material and information subject to discovery. . . . An analysis of whether the People made reasonable efforts sufficient to satisfy CPL article 245 is fundamentally case-specific, as with any question of reasonableness, and will turn on the circumstances presented. There is no rule of 'strict liability'; that is, the statute does not require or anticipate a 'perfect prosecutor.' . . . [C]ourts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (People v Bay, 41 NY3d 200, 211-212 [2023] [internal quotation marks, brackets and citations omitted]). As the Court of Appeals determined, "CPL 245.80 (2) was modified to direct that a court should only dismiss a charge as a sanction for a disclosure violation if it has considered all other remedies and concluded that dismissal 'is appropriate and proportionate to the prejudice suffered by the party' " (id. at 210).
County Court determined that the medical records were in private hands and had to be subpoenaed. Once subpoenaed, the People had to timely disclose them. The court noted that the medical records were obtained on August 17, 2021, and disclosed September 13, 2021, approximately 14 days prior to trial. As to the video calls, County Court further noted that the People disclosed them the same day they were received, resulting in no delay. The court ultimately determined that the COC was not illusory, the supplemental COC was filed in good faith, and defendant was not prejudiced as he had plenty of time to incorporate the information into his defense and use the information at trial, thus no sanctions were required. We agree. In considering the due diligence factors, we find that the People had previously disclosed significant documentation. With respect to the jail letters, the People disclosed this as part of their [*5]discovery in August 2020. The People afforded defendant access to its electronic case file and the opportunity to inspect materials at the prosecutor's office. As to the video calls, the People did not know of their existence at the time of the filing of the initial or supplemental COC. Upon receipt of the video calls, the People disclosed them the same day. Pertaining to the medical records, said records were not in the People's possession until August 17, 2021. Upon learning that the medical records had not been disclosed, the People released them. We cannot say that the People failed to exercise due diligence to satisfy their continuing discovery obligations under CPL article 245. As such, County Court correctly determined that the COC was not illusory. Once this determination was made, the court properly determined if sanctions would be appropriate by determining the prejudice suffered by defendant. The court was correct in its assessment that any relevant information found in the medical records could easily be the subject of cross-examination of the victim, and the record evinces that the victim was thoroughly cross-examined regarding information she gave to the doctor which seemingly contradicted her direct testimony. Accordingly, County Court properly determined that no sanction was warranted. As to the jail letters, the court correctly found that these were not admissible and, even if they had been turned over belatedly, defendant was not prejudiced and no sanction would be imposed (see People v Graham, 233 AD3d 1361, 1366 [3d Dept 2024], lv denied 43 NY3d 944 [2025]; People v Williams, 224 AD3d 998, 1006 [3d Dept 2024], lv denied 41 NY3d 1021 [2024]).
Defendant contends that County Court erred in sentencing him as a persistent violent felony offender because the court improperly relieved the prosecution of their burden of proof by presuming that he did not receive youthful offender status on his 1990 conviction for rape in the first degree. We disagree. At the persistent violent felony offender hearing, the People called an inmate record coordinator at Elmira Correctional Facility, the inmate records clerk with the Broome County Sheriff's Department and submitted certificates of conviction and certificates of disposition setting forth that defendant was convicted in 1990 of rape, in 1994 of robbery in the first degree and, also in 1994, of attempted robbery in the first degree. The documentation lacks any reference to defendant being treated as a youthful offender pertaining to the 1990 rape conviction, which stands in stark contrast to defendant's 1989 robbery conviction which states he was adjudicated a youthful offender. Most telling, this evidence revealed that subsequent to his 1990 rape conviction, defendant was sentenced as a second felony offender on his next felony conviction (the 1994 robbery conviction) without any intervening felony conviction. Defendant testified at the hearing, confirming the three convictions, yet stated [*6]that he was adjudicated youthful offender status on the rape conviction. "Other than defendant's bare assertions, there is nothing in the record to indicate that defendant received youthful offender treatment for the [1990 rape] conviction" (People v Ketchmore, 132 AD2d 889, 892 [3d Dept 1987], lv denied 70 NY2d 752 [1987]; see People v Treadwell, 80 AD2d 697, 698 [3d Dept 1981]) and, more importantly, the record evidence contradicts this assertion. Thus, County Court properly determined that defendant is a persistent violent felony offender (see People v Ketchmore, 132 AD2d at 891; People v Treadwell, 80 AD2d at 698).
Defendant, in his supplemental brief, contends that he did not receive effective assistance of counsel. "A criminal defendant is guaranteed the effective assistance of counsel by both the US and NY Constitutions and, pursuant to the more stringent standard under the NY Constitution, receives it when the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation. It is a defendant's burden to show that meaningful representation was not provided and, further, that there were no strategic or other legitimate explanations — i.e., those that would be consistent with the decisions of a reasonably competent attorney — for the alleged deficiencies of counsel" (People v Burtner, 236 AD3d 1145, 1146 [3d Dept 2025] [internal quotation marks and citations omitted]; see People v Meadows, 183 AD3d 1016, 1022 [3d Dept 2020], lv denied 35 NY3d 1047 [2020]). Defendant argues that defense counsel did not facilitate his testimony before the grand jury. We disagree. Initially, "as this matter involved a 'direct presentment' to the grand jury, defendant was not entitled to notice that a grand jury proceeding was pending" (People v Williams, 171 AD3d 1354, 1355 [3d Dept 2019]; see CPL 190.50 [5] [a]). Moreover, "the Court of Appeals has repeatedly and consistently held that — even when it is due to attorney error — a defense counsel's failure to timely facilitate a defendant's intention to testify before the grand jury does not, per se, amount to a denial of effective assistance of counsel. That is, even where no strategy is involved, a defendant must show prejudice" (People v Graham, 185 AD3d 1221, 1223 [3d Dept 2020] [internal quotation marks, brackets and citations omitted], lv denied 36 NY3d 929 [2020]). Here, defendant did not show any prejudice, as he testified during trial and was nevertheless found guilty (see People v Hogan, 26 NY3d 779, 787 [2016]). With respect to defendant's contention that the counts in the indictment were duplicitous and multiplicitous, this contention is unpreserved (see People v Marcantonio, 238 AD3d 1262, 1265 [3d Dept 2025]).Regarding defendant's assertion that defense counsel was ineffective for failing to make an opening statement, defense counsel was not required to make an opening statement[*7](see CPL 260.30 [4]; 320.20 [3]) and any such error "in failing to make an opening statement is attributable to or substantially ameliorated by the fact that defendant elected to waive a jury trial" (People v Webster, 56 AD3d 1242, 1243 [4th Dept 2008] [internal quotation marks and citation omitted], lv denied 11 NY3d 931 [2009]). Defendant's contention that defense counsel failed to call several witnesses is belied by the record. Defense counsel put on the record his efforts to call two such witnesses, but that he could not locate them and that their family members refused to assist him. Moreover, "[g]enerally, a trial counsel's determination to not call a particular witness, including an expert witness, will not necessarily constitute ineffective assistance of counsel" (People v Mosley, 155 AD3d 1124, 1128 [3d Dept 2017], lv denied 31 NY3d 985 [2018]). Our review of the record evinces that trial counsel presented a solid defense focusing on gaps and ambiguities in the timeline as to the allegations of the sexual assaults. Defense counsel carried out this strategy through vigorous cross-examination of each witness, raising objections and delivering a closing argument that brought this theory to the factfinder for his consideration. Moreover, defendant failed to show the absence of a strategic or other logical reason for defense counsel's actions. "[O]ur assessment of the evidence, the law, and the circumstances in this case, viewed in totality and as of the time of the representation, leaves us satisfied that defendant received meaningful representation" (People v Hooper, 238 AD3d 1207, 1211 [3d Dept 2025][internal quotation marks, brackets and citation omitted]; see People v Colter, 206 AD3d 1371, 1376 [3d Dept 2022], lv denied 38 NY3d 1149 [2022]). We have examined defendant's remaining contentions of ineffective assistance of counsel and find them to lack merit.
Finally, when considering defendant's conduct, the lasting impact on the victim in this case and defendant's lack of responsibility and remorse, we find that the imposed sentence is neither unduly harsh or severe, and we decline defendant's invitation to modify it in the interest of justice (see People v Cuadrado, 227 AD3d at 1184; People v Covington, 222 AD3d 1166, 1171 [3d Dept 2023], lv denied 41 NY3d 964 [2024]).
Garry, P.J., McShan, Powers and Mackey, JJ., concur.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1: At trial, the People moved to dismiss count 4, which County Court granted.

Footnote 2: The text message referred to here is separate and apart from those texts introduced for impeachment purposes.

Footnote 3: Defendant, in his pro se supplemental brief, asserts that the People failed to establish the element of forcible compulsion. This assertion lacks merit as all counts are based on the victim's lack of consent due to age.